378

RAFAEL DE J. CORDERO, AUDITOR DE PUERTO RICO, peticiona-
rio *v*. TRIBUNAL DE DISTRITO DE PUERTO RICO, SECCIÓN
DE SAN JUAN, HON. EMILIO S. BELAVAL, JUEZ, deman-
dado; VÍCTOR GUTIÉRREZ FRANQUI, interventor.

Núm. 1896.—*Sometido:* Abril 3, 1951. *Resuelto:* Abril 9, 1951.

*Gilberto Ramírez Velasco,* abogado del peticionario; *Hon. Pro-
curador Genèral Interino Federico Tilén* y *José C. Aponte,
Subprocurador,* abogados del interventor, demandante en el
pleito principal; *Rafael Arjona Siaca,* como *amicus curiae.*

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tri-
bunal.

La cuestión ante nos es si un senador puede renunciar
su cargo y ser nombrado Procurador General durante el
período no transcurrido aún del término de cuatro años para
el cual fué electo al Senado.

El 2 de noviembre de 1948 Víctor Gutiérrez Franqui fué electo al Senado de Puerto Rico como senador por acumulación por un término de cuatro años comenzando el 2 de enero de 1949. Luego prestó el correspondiente juramento y desempeñó los deberes de su cargo hasta el 5 de febrero de 1951. En dicho día el Lic. Gutiérrez Franqui renunció su escaño de senador; el Gobernador le aceptó la renuncia y le extendió nombramiento de receso para ocupar el cargo de Procurador General de Puerto Rico; y prestó el juramento de rigor.

El Auditor de Puerto Rico ya había asumido la actitud, en respuesta a una carta del Gobernador de fecha 1 de febrero de 1951, de que a tenor con el artículo 30 del Acta Orgánica ningún miembro de la actual Asamblea Legislativa, aun cuando hubiere renunciado previamente su cargo legislativo, podía legalmente ser nombrado Procurador General durante el término de cuatro años a partir del 2 de enero de 1949. El Lic. Gutiérrez Franqui radicó este recurso ante el tribunal de distrito contra el Auditor, en solicitud de una sentencia declaratoria al efecto de que su nombramiento era válido. La contestación del Auditor admitió todos los hechos y las partes sometieron el recurso para su decisión. El tribunal inferior dictó sentencia a favor del Lic. Gutiérrez Franqui. A solicitud del Auditor expedimos auto de *certiorari* para revisar esa sentencia.

Nuestra primera Carta Orgánica no tenía el artículo 30. Por el contrario, el Congreso empleó el enfoque opuesto cuando aprobó el 1902 la Ley Foraker. Otorgó a los miembros del Consejo Ejecutivo una combinación de deberes legislativos y ejecutivos. 31 Stat. 77, 81; véase *González* v. *Corte*, 62 D.P.R. 160, 176. El Acta Jones, aprobada en 1917 como nuestra Carta Orgánica, introdujo por primera vez en Puerto Rico el principio de la completa separación de las funciones ejecutivas y legislativas. Se creó por el Acta Jones un Senado insular que sustancialmente asumió las funciones legislativas del antiguo Consejo Ejecutivo. 39 Stat. 951, 959–60; 48 USCA sec. 819.

Un corolario inevitable de este nuevo principio de la separación de poderes legislativos y ejecutivos fué la doctrina de incompatibilidad de ejercer al mismo tiempo dos cargos diferentes en estas dos ramas del gobierno. El Congreso se dió cuenta de esto y aprobó el artículo 30 de conformidad. Pero en 1917 el Congreso no se limitó a la prohibición contra el desempeño a la vez de dos cargos distintos. El Congreso creyó entonces que la doctrina de la separación de poderes requería dos salvaguardas adicionales, las cuales estableció en el artículo 30. La primera fué la inelegibilidad de los legisladores para cualquier otro cargo de nombramiento en el Gobierno de Puerto Rico durante todo el término para los cuales fueron electos. La segunda fué su inelegibilidad para cualquier cargo de nombramiento creado por la Asamblea Legislativa hasta transcurridos dos años de haber expirado el término de sus cargos. [1]

El Art. I, Sec. 6, Cl. 2 de la Constitución de los Estados Unidos impide el desempeño de dos cargos a la vez, prohibiéndole a un miembro del Congreso el desempeñar durante su incumbencia cualquier cargo en el Gobierno Federal. Contiene asimismo una prohibición similar a la segunda prohibición del artículo 30 sustancialmente en el mismo len-

---

[1] El artículo 30 según fué originalmente aprobado en 1917, prescribía así:

"El término del cargo de los senadores y representantes electos en las primeras elecciones generales, será hasta el primero de enero de 1921, y el término del cargo de los senadores y representantes electos en subsiguientes elecciones, será de cuatro años a contar desde el dos de enero siguiente a su elección. En caso de ocurrir vacantes entre los miembros del Senado o en la Cámara de Representantes, podrán celebrarse elecciones especiales en los distritos en que ocurrieren dichas vacantes, de acuerdo con las reglas que se prescribieren por ley; pero los senadores o representantes electos en tales casos desempeñarán sus cargos solamente por el tiempo que falte para expirar el término del puesto vacante, y ningún senador o representante será nombrado, durante el tiempo por el cual hubiere sido electo, para ningún cargo civil bajo el Gobierno de Puerto Rico, ni será nombrado para ningún cargo creado por ley de la Asamblea Legislativa durante el tiempo por el cual hubiere sido electo, hasta dos años después que su término del cargo haya expirado." 39 Stat. 951, 959–60, 48 USCA sec. 819. (Traducción nuestra.)

guaje que el texto de 1917 del artículo 30. Pero no contiene dicha Constitución una disposición como la primera hallada en el artículo 30.([2]) Sin embargo, no empece la ausencia de tal limitación en la Constitución Federal, el Congreso creyó conveniente incluir la primera prohibición en el artículo 30 del Acta Jones. También incluyó el Congreso una disposición similar en el Acta Orgánica de Hawái. Al así hacerlo, siguió el ejemplo de 19 estados con prácticamente idénticas disposiciones. Otras 13 constituciones estatales y la Carta Orgánica de Alaska sólo contienen la segunda prohibición del artículo 30. Pero al proveer para esta última prohibición, emplean en igual forma frases sustancialmente idénticas a "durante el tiempo por el cual hubiere sido electo."([3])

---

([2]) El Art. I, Sec. 6, Cl. 2 de la Constitución de los Estados Unidos, provee como sigue·

"Ningún Senador o Representante podrá, durante el Término para el cual fué electo, ser nombrado para ocupar cualquier Cargo civil bajo la Autoridad de los Estados Unidos, que haya sido creado, o cuyos Emolumentos hayan sido aumentados durante dicho término; y ninguna Persona que ocupe cualquier Cargo en el Gobierno de los Estados Unidos, será Miembro de cualquiera de las dos Cámaras mientras desempeñe dicho Cargo." (Traducción nuestra.)

([3]) Ala., Art. IV, sec. 59, pág. 17; Ariz., Art. IV, sec. 5, pág. 71; Ark., Art. V, sec. 10, pág. 105; Calif., Art. IV, sec. 19, pág. 149; Colo., Art. V, sec. 8, pág. 241; Del., Art. II, sec. 14, pág. 304; Fla., Art. III, sec. 5, pág. 329; Ga., Art. III, sec. 4, cl. 7, pág. 365; Ill., Art. IV, sec. 15, pág. 457; Ind., Art. IV, sec. 30, pág. 488; Md., Art. III, sec. 17, pág. 731; Mass., Art. LXV, pág. 799; Mich., Art. V, sec. 7, pág. 307; Minn., Art. IV, sec. 9, pág. 831; Miss., Art. IV, sec. 45, pág. 864; Mo., Art. IV, sec. 12, pág. 898; Mont., Art. V, sec. 7, pág. 949; Neb., Art. III, sec. 16, pág. 987; Nev., Art. IV, sec. 8, pág. 1011; N. J., Art. IV, sec. 5, cl. 1, pág. 1054; N. M., Art. IV, sec. 28, pág. 1070; N. Y., Art. III, sec. 7, pág. 1105; Okla., Art. V, sec. 23, pág. 1235; Ore., Art. IV, sec. 30, pág. 1307; Pa., Art. II, sec. 6, pág. 1327; S. D., Art. III, sec. 12, pág. 1434; Tex., Art. III, sec. 18, pág. 1493; Utah, Art. VI, sec. 7, pág. 1542; Wash., Art. II, sec. 13, pág. 1631; W.Va., Art. VI, sec. 15, pág. 1663; Wisc., Art. IV, sec. 12, pág. 1692; Wyo., Art. III, sec. 8, pág. 1713; 48 U.S.C. secs. 82, 588.

Las páginas citadas para las constituciones estatales son de la obra "Constitutions of the States and United States," Vol. III, New York State Constitutional Convention Committee, 1938. No se nos ha llamado la atención a cambios pertinentes algunos en las constituciones estatales desde 1938.

El Lic. Gutiérrez Franqui admite que el artículo 30, según fué aprobado originalmente, lo habría hecho inelegible para desempeñar un cargo civil en el Gobierno de Puerto Rico durante todos los cuatro años para los cuales fué electo, ya hubiere renunciado o no su escaño legislativo en fecha anterior. Esta admisión es inevitable debido a la clara e inequívoca disposición de dicho artículo 30 al efecto de que no podía ser nombrado "durante el tiempo por el cual hubiere sido electo". Casi sin excepción, las cortes han resuelto en casos que interpretan disposiciones constitucionales similares, que la inelegibilidad existe durante todo el período para el cual fué electo el legislador, y no queda afectada por la renuncia del escaño legislativo. Anotaciones, 5 A.L.R. 117, 120–124, 40 A.L.R. 945.[4]

Este caso ha surgido precisamente porque el artículo 30 fué enmendado en 1938. En dicho año, aparentemente en respuesta a una solicitud del Comisionado Residente de Puerto Rico, se enmendó el artículo 30 para que proveyera que las vacantes en la Legislatura insular fueran cubiertas por nombramiento más bien que por elecciones especiales. En adición a este cambio, la Cámara eliminó del artículo 30 ambas prohibiciones contra los nombramientos de legisladores para otros cargos. 83 Cong. Rec., Parte 2, págs. 1573–74 (1938).

Cuando el proyecto de ley llegó al Senado, éste concurrió en la actuación de la Cámara con referencia a llenar

---

[4] Al mismo efecto, *State ex rel. Fraser* v. *Gay*, 28 S.2d 901 (Fla., 1947) ; *State ex rel. Pennick* v. *Hall*, 173 P.2d 153 (Wash., 1946) ; *Miller* v. *Holm*, 14 N.W.2d 99 (Minn., 1944) .(con una vigorosa opinión disidente de dos jueces).

El único caso en sentido contrario es el de *Meredith* v. *Kauffman*, 169 S.W.2d 37 (Ky., 1943).

Maryland tuvo la sabia precaución, si bien probablemente innecesaria, de proveer que "Ningún senador o delegado . . . , *no importa que luego renuncie,* podrá durante *todo* el término por el cual fué electo, ser elegible para ocupar cualquier cargo que hubiere sido creado . . . durante dicho término." Md. Const., Art. III, sec. 17, pág. 731. (Bastardillas nuestras.)

vacantes en la Legislatura. Pero se negó a dar su conformidad a la completa eliminación de las dos prohibiciones halladas en la versión del año 1917 del artículo 30. Más bien, restituyó estas prohibiciones en forma modificada. Según fué aprobado en 1917, el artículo 30 disponía en parte que ". . . ningún senador o representante será nombrado, *durante el tiempo por el cual hubiere sido electo,* para ningún cargo civil . . .". (Bastardillas nuestras.) En la enmienda del Senado de 1938, esta oración lee en parte que "Ningún senador o representante así electo o nombrado podrá ser nombrado para ningún cargo civil . . . *durante su término del cargo. . .".* (Bastardillas nuestras.) El Comité sobre Territorios y Asuntos Insulares del Senado, en su informe escrito al Senado, manifestó que el lenguaje que se le insertó al proyecto de la Cámara "restituye la disposición de ley existente que prohíbe que cualquier senador o representante, durante su término del cargo, ocupe cualquier cargo bajo el gobierno civil de Puerto Rico . . .". 83 Cong. Rec., Parte 6, pág. 6294 (1938). La Cámara aceptó la enmienda y el proyecto según fué enmendado por el Senado se convirtió en ley. 52 Stat. 595, 48 USCA sec. 819, 1950 *Cumulative Pocket Part.* [5]

La controversia se reduce en consecuencia a determinar el significado de la enmienda de 1938 al artículo 30. El Auditor sostiene que la enmienda no alteró el alcance legal del

[5] El artículo 30, según quedó enmendado en 1938, dispone así:

"El término del cargo de los senadores y representantes electos en cualquier elección general será de cuatro años, comenzando el segundo día de enero siguiente a la fecha en que se celebre tal elección. En caso de ocurrir una vacante en el cargo de senador o representante, por razón de defunción, renuncia, o cualquier otra causa, el Gobernador, a propuesta del comité central del partido político a que pertenezca tal senador o representante, nombrará para cubrir tal vacante un senador o representante de dicho partido político, quien desempeñará el cargo por el resto del término para el cual fué electo su antecesor. Ningún senador o representante así electo o nombrado podrá ser nombrado para ningún cargo civil bajo el Gobierno de Puerto Rico durante su término del cargo, ni será elegible para nombramiento para ningún cargo creado durante su término del cargo, hasta después de transcurridos dos años desde la fecha en que haya vencido su término del cargo." (Traducción nuestra.)

artículo 30 con referencia al problema ante nos. Arguye que al sustituir "durante el tiempo por el cual hubiere sido electo" por "durante su término del cargo", el Congreso sencillamente empleó una frase más concisa para expresar la misma idea. Para él ésta fué únicamente un cambio de forma con el fin de eliminar lenguaje tautológico. Por consiguiente, a pesar de la enmienda de 1938, el Auditor afirma que el artículo 30 todavía prohibe el nombramiento del Lic. Gutiérrez Franqui como Procurador General durante todos los cuatro años para los cuales fué electo, independientemente de su renuncia como senador.

En apoyo de esta contención, el Auditor hace hincapié en el hecho de que en la primera oración del artículo 30 el Congreso definió "el término del cargo" como un período fijo de cuatro años con una fecha específica para comenzar a correr. Su posición es que esta definición impera a través de todo el artículo 30. Por tanto, interpreta "su término del cargo" en la última oración del artículo 30 como que quiere decir el término de cuatro años según se define en la primera oración. Bajo estas circunstancias, el Auditor es del criterio que el pronombre personal hallado en "su término del cargo" se usó como impersonal y se incluyó únicamente para evitar la supuesta construcción pobre que habría resultado usando "el" en vez de "su" en dicho contexto. En síntesis, según el Auditor "su término del cargo" se refiere a un término fijo de cuatro años, y no al período de tiempo en que un incumbente específico desempeñe el cargo.

El Auditor cita, en apoyo de esta forma de interpretar "su término del cargo", casos donde se ha resuelto que la frase "el término del cargo" usada bajo otras circunstancias quiere decir el período por el cual una persona es electa o nombrada, y no el tiempo en que un incumbente específico de hecho ocupa el cargo.[6] Finalmente, el Auditor

---

[6] *People* v. *Le Fevre*, 40 P. 882 (Col., 1895); *State* v. *Knight*, 245 P. 267 (Mont., 1926); *State* v. *Rogers*, 18 P. 2d 617, 618 (Mont., 1933); *State* v. *Galusha*, 104 N.W. 197, 201 (Neb., 1905); *Annotation*, 50 L.R.A. (N.S.) 336, 343.

alega que el informe del Comité del Senado demuestra fuera de toda duda que el Congreso tuvo por miras, no obstante la modificación de su lenguaje, establecer en la versión de 1938 del artículo 30 exactamente las mismas prohibiciones comprendidas en la versión de 1917. ([7])

Si el Congreso hubiera conservado el lenguaje de la versión de 1917, no diferiríamos de la posición asumida por el Auditor. Por otro lado, si la enmienda de 1938 hubiera prohibido tal nombramiento "durante su desempeño del cargo", "durante su incumbencia" o "mientras esté en funciones", nadie podría cuestionar la validez del nombramiento del Lic. Gutiérrez Franqui. El caso se encuentra ante nos precisamente porque en 1938 el Congreso sustituyó la diáfanamente clara frase "durante el tiempo por el cual hubiere sido electo" por la frase más controversial "durante su término del cargo".

Nos es difícil convenir con el Auditor en que la sustitución de "durante el tiempo por el cual hubiere sido electo" por "durante su término del cargo" se hizo solamente para simplificar el lenguaje del artículo 30. La frase original es una frase clásica. Sin excepción alguna, se empleó exactamente en esta forma en 32 estados y en dos Actas Orgánicas dondequiera que los redactores quisieron hacer que un legislador fuera inelegible durante todo el período de tiempo por el cual fué electo, independientemente de su renuncia del escaño legislativo. Véase nota 3. Ni una sola constitución estatal ha adoptado la teoría del Auditor de que la frase más breve es una equivalencia más concisa de la frase mayor. Por el contrario, aun las constituciones redactadas en fechas más recientes, ya sea por la razón de imitar o por alguna otra, se adhieren a la clásica frase como palabras consagradas por su uso.

---

([7]) El Lic. Rafael Arjona Siaca compareció ante el Tribunal de Distrito y ante este Tribunal como *amicus curiae* en apoyo de la actitud asumida por el Auditor.

Las Constituciones y las Cartas Orgánicas se redactan cuidadosamente y se enmiendan con poca frecuencia. Si el Congreso hubiera tenido por miras dejar intacta la primera prohibición del artículo 30, parece probable que hubiese empleado los claros y absolutos términos de la tradicional frase. No podemos concluir que la desviación de esa frase es una mera cuestión de sintaxis. Bajo las circunstancias concurrentes, creemos que es más razonable decir que el Congreso tenía un propósito sustancial en mente cuando modificó el lenguaje del artículo 30 a este respecto.

Tampoco puede sostenerse que la enmienda del artículo 30 proveyendo para los nombramientos en véz de las elecciones especiales para cubrir las vacantes en la Legislatura, hacía imposible o dificultoso utilizar la fraseología anterior con relación a la inelegibilidad de los legisladores para cargos civiles. El Congreso fácilmente pudo haber añadido las palabras "o nombrado" a la frase original "durante el tiempo por el cual hubiere sido electo" si hubiera deseado conservar la prohibición sin enmendar. En verdad, ésta es exactamente la manera como Nebraska resolvió el problema. Art. III, sec. 16, Constitución de Nebraska, pág. 987.

También hallamos alguna significación en el uso del pronombre personal en "su término del cargo". Seguidamente admitimos que, por sí solo, este problema gramatical no sería decisivo del caso ante nos. Esto en verdad sería "construir una fortaleza con un diccionario." *Sucn. Giusti* v. *Tribunal de Contribuciones*, 70 D.P.R. 117, 136, nota 9. Pero no podemos dejar de considerarlo como un argumento adicional en apoyo de la posición del Lic. Gutiérrez Franqui.

Indudablemente, la doctrina de separación de poderes jugó un gran papel en persuadir al Congreso a aprobar la versión del 1917 del artículo 30. Pero el Congreso pudo haberse convencido para el 1938 de que este principio no debía aplicarse en Puerto Rico en forma tan drástica como para prohibir el traslado de un hábil senador a un cargo ejecutivo de importancia. *Cf. Banco Popular de Puerto Rico* v. *Corte*,

63 D.P.R. 66; *Buscaglia* v. *District Court of San Juan*, 145 F.2d 274, 283-4, (C.C.A. 1, 1944), cert. denegado en 323 U. S. 793. El Congreso conocía a cabalidad la Constitución Federal que provee solamente para la incompatibilidad y no para la inelegibilidad bajo estas circunstancias. El Congreso pudo haber razonado que si el Presidente puede en el interés público nombrar un Senador de los Estados Unidos para el cargo de Procurador General de los Estados Unidos, el artículo 30 debía enmendarse para permitir la misma actuación aquí.[8]

La Cámara, en donde el Comisionado Residente de Puerto Rico tenía voz, eliminó enteramente las prohibiciones del artículo 30.. El Senado no estuvo de acuerdo. Si bien el historial legislativo guarda silencio sobre este extremo, el proyecto del Senado pudo haber sido redactado adoptando el actual lenguaje del artículo 30 como un punto medio entre las dos posiciones diametralmente opuestas, representadas por la versión original del artículo 30 frente al proyecto de la Cámara eliminando ambas prohibiciones del artículo 30.

No creemos que el informe del Senado inexorablemente nos obligue a resolver este caso a favor del Auditor. Es cierto que el mismo dice que el proyecto del Senado "restituye la disposición de ley existente que prohibe que cualquier senador o representante, durante su término del cargo, ocupe cualquier cargo bajo el gobierno civil de Puerto Rico . . .". Si el proyecto del Senado hubiera de hecho restituído el lenguaje idéntico de la Ley de 1917, convendríamos sin vacilación alguna con la interpretación que da el Auditor al informe del Senado. Pero éste debe leerse a la luz del propio lenguaje del proyecto del Senado. Cuando se lee conjuntamente con el proyecto, no es irrazonable extractar del informe del Senado la inferencia de que la primera prohibición del artículo 30 se restituía en el proyecto del Senado hasta el

[8] Este no es un ejemplo hipotético. El Hon. J. Howard McGrath, Procurador General de los Estados Unidos, renunció como Senador por Rhode Island para aceptar su actual cargo.

punto de que prohibía a un legislador el ser nombrado para un cargo civil y permanecer en el escaño legislativo.

Afirma el Auditor que la incompatibilidad en la ocupación de dos cargos distintos rige en Puerto Rico sin que exista disposición alguna para ello en la Carta Orgánica o en legislación insular. En consecuencia arguye que el Congreso no pudo haber tenido por miras en 1938 convertir la primera prohibición del artículo 30 de inelegibilidad durante el término de cuatro años en incompatibilidad, toda vez que esta última ya estaba en vigor en Puerto Rico. No nos detenemos a examinar el caso de *Pueblo ex rel. Arjona* v. *Landrón*, 57 D.P.R. 67, en el que descansa el Auditor al hacer esta aseveración. El hecho de que las cortes puedan resolver que dicha incompatibilidad está implícita en la doctrina de separación de poderes no impidió a los Padres de la Patria ni a los redactores de varias Constituciones Estatales incluir este principio en la Constitución Federal y en algunas estatales. En igual forma, el Congreso pudo haber preferido en 1938 proveer en el artículo 30 una prohibición absoluta más bien que dejar el asunto en forma implícita y a una posible interpretación de las cortes caso por caso.

Los casos citados en las Anotaciones, 5 A.L.R. 117, 120–124, en 40 A.L.R. 945, y en la nota 4 no son de considerable ayuda aquí. Como ya se ha indicado, dichos casos fueron resueltos bajo Constituciones que prohibían el nombramiento "durante el tiempo por el cual hubiere sido electo". Al llegar a la conclusión de inelegibilidad estos casos hicieron hincapié en el claro y enfático significado de esta frase. No creemos que sostengan la proposición de que el mismo resultado se impone al tratarse de la frase distinta "su término del cargo".

Tampoco son decisivos los casos citados en la nota 6 que interpretan "el término del cargo" como un período fijado por ley. Dicha frase fué usada en ellos bajo otras circunstancias. Por consiguiente no son de aplicación aquí. "Una palabra no es un cristal, transparente e inmutable, es el

ropaje de un pensamiento vivo y puede variar extensamente en color y contenido de acuerdo con las circunstancias y la época en que se use." *Towne* v. *Eisner*, 245 U. S. 418, 425; *Ballester* v. *Tribunal de Apelación de Contribuciones*, 61 D.P.R. 474, 493; *Pueblo* v. *López Lugo et al.*, 67 D.P.R. 623, 630. Las ideas son prisioneras del lenguaje que las expone. En este caso debemos decidir qué significa "su término del cargo" no en otro sitio, sino en el artículo 30 a la luz del contexto, de las circunstancias concurrentes y de su historial legislativo. Toda vez que ninguna otra jurisdicción tiene una disposición constitucional similar, los casos de otras jurisdicciones necesariamente no son aplicables.

El caso de *Pueblo ex rel. Castro* v. *Padrón*, 60 D.P.R. 798, confirmado en 142 F.2d 508 (C.C.A. 1, 1944), cert. denegado en 323 U. S. 791, no arroja luz alguna a este caso. En él la controversia fué si Padrón podía ocupar a la misma vez los cargos de Senador y Secretario de la Capital. Como dijo la Corte de Apelaciones a la pág. 509, "La única cuestión . . . es si [el cargo de Secretario de la Capital] es un cargo civil bajo el Gobierno de Puerto Rico". Nada hay en la opinión de este Tribunal ni en la de la Corte de Apelaciones que ayude en la resolución del presente caso.

Creemos que hemos demostrado que el peso del razonamiento está a favor de la incompatibilidad y no de la inelegibilidad. Aun en el supuesto de que fuera una cuestión más cerrada, la tendencia moderna es decidir a favor de la elegibilidad debido a lo deseable que es permitirle al ejecutivo la mayor discreción posible en la selección de sus funcionarios. "A las palabras que limitan el derecho de una persona a ocupar un cargo debe dárseles una interpretación liberal a favor de aquéllos que interesan ocupar el cargo, con el fin de que el pueblo pueda tener el beneficio de seleccionar de entre todos los que de hecho y de derecho resultan idóneos." Véanse *Gazan* v. *Heery*, 187 S.E. 371, 378 (Ga., 1936); *State* v. *Heath*, 132 S.W.2d 1001, 1004 (Mo., 1939); *State ex rel. Fraser* v. *Gay*, supra, pág. 904.

Visto lo anterior, concluímos que el Congreso quiso cambiar la sustancia de la primera prohibición mediante el cambio efectuado en su lenguaje llave. Una vez que llegamos a este resultado, es obvio que el único cambio que el Congreso posiblemente pudo haber tenido en mente fué convertir la inelegibilidad anterior para el cargo en una regla de incompatibilidad, como la que se encuentra en el Art. I, Sec. 6, Cl. 2 de la Constitución Federal. "Su término del cargo", según se emplea esta frase en el artículo 30, por tanto significa ahora el período de hecho desempeñado por un legislador. Por consiguiente, una vez que se aceptó la renuncia del Lic. Gutiérrez Franqui, *su* término del cargo había terminado y era elegible para el nombramiento de Procurador General.(9)

Terminamos indicando que si el electorado de Puerto Rico acepta los términos de la Ley del Congreso de julio 3 de 1950 y redacta su propia Constitución, el problema surgido en este caso desaparecerá. Dicha Ley deroga el artículo 30, a ser efectiva dicha derogación el día en que la Constitución de Puerto Rico entre en vigor. 64 Stat. 320. El pueblo de Puerto Rico estará en libertad de determinar mediante disposición constitucional o en alguna otra forma qué política va a adoptar en cuanto a este asunto. A la luz de esta situación, "no creemos que la civilización llegará a su fin, no importa en qué forma se resuelva este caso." El Juez Holmes disintiendo en *Haddock* v. *Haddock*, 201 U. S. 562, 628.

*Debe anularse el auto expedido.*

---

(9) Casos que envuelven diferentes cuestiones han llegado a la misma conclusión en cuanto al significado de la frase "término del cargo". *Cf. Board of Chosen Freeholders* v. *Lee*, 70 A. 925 (N. J., 1908); *Badger et al.* v. *U. S. ex rel. Bolles*, 93 U. S. 599, 603; *Carter* v. *State*, 186 P. 464 (Okla., 1919). Admitimos que esos casos no son estrictamente iguales. Pero ningún caso posiblemente podría ser igual, porque la versión de 1938 del artículo 30, como ya se ha indicado, es única en su clase.