La Jueza Asociada Señora Fiol Matta
emitió la opinión del Tribunal.
El presente caso permite expresarnos sobre el alcance de la prohibición contenida en el Art. 4.004 de la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991 (21 L.P.R.A. see. 4154) (Ley de Municipios Autónomos), en cuanto a que un asambleísta que renuncie a su escaño no puede, durante el término por el cual fue electo como legislador municipal, ocupar puestos municipales de confianza o de carrera en el municipio en que fue electo si éstos fueron creados o mejorados en su sueldo durante dicho término. Por las razones que exponemos a continuación, reafirmamos la norma del caso de *395 González v. Alcalde de Utuado, 101 D.P.R. 47 (1973), y resolvemos, además, que un ex asambleísta que ocupe un cargo municipal luego de su renuncia al escaño político no debe disfrutar de un beneficio legislado por la Asamblea de la cual formó parte, y debe devolver el dinero que haya recibido en contravención a esta norma. No obstante, aclaramos que esta prohibición no aplica cuando el beneficio se legisla antes de que el asambleísta sea parte de la asamblea municipal o por una asamblea municipal de la cual no formó parte, aunque entre en efecto durante el cuatrienio para el cual fue electo.
I
Los hechos de este caso son los siguientes. En marzo de 2002 el Municipio de Morovis, luego de un informe de la Oficina del Contralor Puerto Rico, demandó en cobro de dinero a los recurridos, el señor Rodríguez Adorno y el señor Adorno Marrero. El Municipio reclamaba el reembolso de los salarios que recibieron los recurridos por los servicios que prestaron como empleados de confianza, por en-tender que sus nombramientos fueron contrarios al Art. 4.004 de la Ley de Municipios Autónomos, supra. Posteriormente, el Municipio de Morovis enmendó su demanda para reclamar, no la totalidad de los salarios, sino la diferencia entre los salarios de los puestos antes de que empezara el cuatrienio de 1997-2002 y los aumentos recibidos durante ese cuatrienio. Esto debido a que los recurridos fueron asambleístas durante un período del cuatrienio durante el cual se hicieron efectivos los aumentos para sus puestos.
Los eventos que propiciaron la controversia fueron los siguientes. El señor Rodríguez Adorno fue electo asambleísta para el cuatrienio de 1997-2002. Antes de esto había servido como asambleísta desde el 13 de mayo de 1994, fecha cuando llenó una vacante que surgió para su partido *396 en la Asamblea del pueblo de Morovis. El 11 de agosto de 1998, efectivo al 31 de agosto de 1998, éste renuncio al cargo de asambleísta; el 16 de septiembre de 1998 fue nombrado al puesto de confianza de Director del Departamento de Recreación y Deportes Municipal. El señor Adorno Marrero también fue electo asambleísta para el cuatrienio de 1997—2002. Este renunció al cargo de asambleísta municipal el 21 de enero de 1999, efectivo ese mismo día, y el 11 de mayo de 1999 fue nombrado al puesto de confianza de Director de Obras Públicas.
Durante el año fiscal 1992-1993, la Asamblea Legislativa de Morovis aprobó el Plan de Clasificación de Puestos y Retribución Uniforme, que disponía de unos aumentos durante el cuatrienio de 1997-2000 para los puestos de confianza que existiesen en ese municipio.(1) El 15 de enero de 1993, conforme a la nueva Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991, la Asamblea de Morovis actualizó la Ordenanza de Puestos de Confianza e incluyó entre esos puestos los cargos que eventualmente ocuparían los recurridos. Véase Ordenanza Núm. 11 Serie 1992-93 del Municipio de Morovis. Mientras los recurridos formaban parte de la Asamblea Municipal de Morovis, ésta aprobó la Resolución Núm. 52 Serie 1997-98, que establecía el presupuesto del municipio para el año fiscal 1998-1999. Se hacía entrar en vigor con este presupuesto el plan de aumentos aprobado en el Plan de Clasificación de Puestos y Retribución Uniforme de 1993. Luego de que los recurridos renunciaran a la asamblea municipal y se ocuparan sus nuevos puestos —que eran cargos de confianza— la Asamblea de la cual habían formado parte aprobó la Resolución Núm. 3 Serie 1999-2000, mediante la cual se aumentaron, efectivo el 1 de julio de *397 1999, las escalas salariales de varios puestos de confianza, entre ellos los puestos de los recurridos.(2)
Al concluir la presentación de la prueba del municipio, los recurridos solicitaron la desestimación del caso. El Tribunal de Primera Instancia accedió por entender que no se había violado el Art. 4.004 de la Ley de Municipios Autónomos, supra, ya que el primer aumento cuestionado obedeció al Plan de Clasificación de Puestos y Retribución Uniforme que aprobó una Asamblea Legislativa de la cual los recurridos no formaban parte, y el segundo aumento fue hecho por la Asamblea Legislativa de Morovis de la cual ellos formaban parte, pero no mientras ellos fueron miembros de ésta. Concluyó el tribunal que ellos no participaron de la aprobación de ninguno de los aumentos, por lo cual no estaban sujetos a la prohibición del Art. 4.004, supra. El Tribunal de Primera Instancia entendió también que la causa de acción del municipio debía ser desestimada, pues los recurridos no eran los llamados a responder según el Art. 11.027 de la Ley de Municipios Autónomos, 21 L.P.R.A. see. 4576. El municipio acudió al Tribunal de Apelaciones, el cual confirmó la decisión del foro de instancia por entender que los ex asambleístas no estaban sujetos a la prohibición del Art. 4.004, supra, ya que no participaron de la aprobación de ninguno de los aumentos.
Por esa razón el Municipio de Morovis acude ante nosotros y nos plantea que se equivocaron el foro apelativo y el de instancia al resolver contrario a nuestra decisión en González v. Municipio de Utuado, supra. Por su parte, los recurridos sostienen que no se ha violado el Art. 4.004 de la Ley de Municipios Autónomos, supra, ya que ellos no participaron en la aprobación de ninguno de los aumentos. En *398 la alternativa, plantean que no son ellos los llamados a responder por la violación, puesto que según el Art. 11.027 de la Ley de Municipios Autónomos, supra, le corresponde a los funcionarios que negligentemente aprobaron la acción de personal o el pago, devolver el dinero pagado en contravención a las disposiciones de la ley.
Ante estos hechos y los planteamientos de las partes, debemos resolver las cuestiones siguientes. Primero, si la prohibición del Art. 4.004 de la Ley de Municipios Autónomos, supra, aplica cuando la mejora al puesto municipal ha sido legislada antes de que el asambleísta entre a formar parte de la Asamblea Municipal, pero entra en efecto durante el período para el cual éste fue electo. También debemos decidir si el artículo antes mencionado aplica cuando se ocupa un puesto una vez se renuncia al cargo de asambleísta y la Asamblea Municipal a la cual se renunció legisla un aumento. De responderse alguna de las preguntas en la afirmativa, debemos determinar quiénes son los responsables de devolver el dinero que se pagó en contravención de la ley.
II
 A. La Ley de Municipios Autónomos contiene varias normas que procuran mantener la pureza de las acciones municipales y la de sus funcionarios, en especial la de los asambleístas. Entre esas normas se encuentran el Art. 4.004 y el Art. 11.027, supra. El Art. 4.004, supra, en lo pertinente a este caso, dispone:
Las siguientes normas generales regirán la conducta de los legisladores municipales en todo aquello que se relacione directa o indirectamente con los deberes oficiales de su cargo:
(b) No podrán ser funcionarios ni empleados del municipio de cuya legislatura sean miembros. No obstante lo antes dispuesto, cualquier legislador municipal que renuncie a su cargo como tal, podrá ocupar cualquier cargo o puesto de confianza o de carrera en el municipio en que fue electo, siempre y cuando *399 se trate de un cargo o puesto que no haya sido creado o mejorado en su sueldo durante el término por el cual fue electo legislador municipal.
Por su parte el Art. 11.027, supra, provee:
(b) Cualquier suma de dinero pagada en relación con acciones de personal en contravención con las disposiciones de este subtítulo, de los reglamentos o de las normas aprobadas conforme al mismo, será recuperada del funcionario o empleado que, por descuido o negligencia, aprobare o refrendare la acción de personal o de aquel que aprobare dicho pago, o que suscribiere o refrendare el comprobante, nóminas, cheque u orden de pago; o de las fianzas de dicho funcionario. Los dineros así recuperados se reintegrarán al tesoro del municipio correspondiente, según sea el caso.
La primera de estas disposiciones de la Ley de Municipios Autónomos proviene de la Sec. 15 del Art. Ill de nuestra Constitución, L.P.R.A., Tomo 1. Antes de que se adoptara la ley de municipios vigente, la Ley Municipal de 1960 contenía la misma prohibición. No obstante, esta prohibición se incluyó haciendo referencia directa a la disposición constitutional.(3) Entre las limitaciones de las que hablaba este artículo de la Ley Municipal de 1960 se encontraba la de la Sec. 15 del Art. Ill de nuestra Constitución, supra. Esta sección establece que:
Ningún Senador o Representante podrá ser nombrado, durante el término por el cual fue electo o designado, para ocupar en el Gobierno de Puerto Rico, sus municipios o instrumentalidades, cargo civil alguno creado, o mejorado en su sueldo, durante dicho término. Ninguna persona podrá ocupar un cargo en el Gobierno de Puerto Rico, sus municipios o instrumentalidades y ser al mismo tiempo Senador o Representante. Estas disposiciones no impedirán que un legis *400 lador sea designado para desempeñar funciones ad honorem. Const. E.L.A., L.P.R.A., Tomo 1, ed. 1999, págs. 377-378.
Esta prohibición continuó formando parte de la reglamentación a la cual estaban sujetos los asambleístas cuando se derogó la Ley Municipal de 1960 y se adoptó la Ley Orgánica de los Municipios de Puerto Rico en 1980.(4) Además, con esta ley, al igual que en la regulación vigente, se dejó claro que, como excepción a la norma de que los asambleístas no pueden ocupar otros puestos en el municipio durante el término para el cual fueron electos, una vez los asambleístas renuncian al cargo pueden ocupar un cargo municipal siempre y cuando el cargo o puesto a ocupar no haya sido creado o mejorado en su sueldo durante el término por el cual fue electo o designado.
El propósito de todas estas legislaciones es dual. De una parte, se trata de evitar que se acumulen en unas pocas manos varios sueldos. También, se intenta impedir que los legisladores se beneficien de las influencias que pueden tener mientras están en su cargo y aún después.(5) *401 Con esto en mente fue que los redactores de la Constitución decidieron extender la prohibición a la ocupación de dos cargos públicos, no sólo durante el tiempo mientras se ejercía el cargo legislativo, sino por todo el término para el cual se fue electo.
En Cordero, Auditor v. Tribl. de Distrito, 72 D.P.R. 378, 380 esc. 1 (1951), interpretando la Sec. 15 del Art. Ill de nuestra Constitución, supra, resolvimos que la frase “durante el tiempo por el cual hubiere sido electo” se utilizó porque los redactores de la Constitución quisieron que los legisladores fueran inelegibles durante todo el período de tiempo por el cual fueron electos, independientemente de que hubiesen renunciado a su escaño. Asimismo, hemos resuelto que los redactores, al adoptar esa frase, quisieron prohibir absolutamente el que un senador o representante ocupe un cargo civil en el Gobierno de Puerto Rico, sus municipios o instrumentalidades, que haya sido creado o mejorado en su sueldo durante el término por el cual fue electo. González v. Alcalde de Utuado, supra. Al mismo tiempo, en González v. Alcalde de Utuado, supra, extendimos esta prohibición a los asambleístas municipales, ya que la Ley Municipal de 1960, vigente para la fecha del caso, se refería directamente a la prohibición constitucional. Esta prohibición permaneció en la Ley Orgánica de los Municipios de Puerto Rico y en la actual Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991.
De igual modo, continúa vigente la norma que permite a los miembros de la Asamblea Municipal renunciar a sus escaños legislativos para ocupar cargos adminis *402 trativos o puestos en los municipios en que fueron electos, siempre y cuando el cargo o puesto no se haya creado o mejorado en su sueldo durante el término por el cual fue electo o designado. En otras palabras, la ley establece claramente que la única forma para que un asambleísta ocupe un cargo administrativo o un puesto municipal durante el término para el cual fue electo es, primeramente, renunciando al puesto de asambleísta y, en segundo lugar, que el cargo que vaya a ocupar no haya sido mejorado o creado durante el término para el cual él fue electo asambleísta. En cuanto a esta prohibición, establecimos que se trataba de una prohibición absoluta.
B. Hoy debemos resolver si la norma dispuesta en el Art. 4.004 de la Ley de Municipios Autónomos, supra, se refiere solamente a una mejora legislada durante el término por el cual fue electo el ex asambleísta o se refiere también a una mejora que haya entrado en efecto durante ese período. No hay duda que, debido al propósito de la ley, la prohibición aplica cuando la mejora fue legislada durante el período para el cual el asambleísta fue electo, aunque él no haya participado en su aprobación por haber renunciado antes de vencerse su término. Lo que se pretende evitar en esos casos es que el asambleísta haga uso de las influencias que se derivan de su puesto. Este peligro no existe cuando el asambleísta no tuvo relación alguna con la Asamblea Municipal que legisló la mejora o que creó el cargo, por lo que la prohibición no debe aplicar a mejoras legisladas en períodos anteriores a aquel para el cual fue electo el asambleísta. En la controversia ante nosotros, por ejemplo, el Tribunal de Primera Instancia determinó que uno de los aumentos reclamados obedeció al Plan de Clasificación de Puestos y Retribución Uniforme del municipio de Morovis, legislado por una Asamblea Municipal anterior. No se puede sostener, por lo tanto, que los primeros aumentos que se otorgaron a los recurridos en este caso estén prohibidos por la ley. En vista de ello, resolvemos que *403 no están obligados a rembolsar lo recibido por ese aumento.
C. Por otra parte, queda por analizar si los recurridos podrían beneficiarse de los aumentos que aprobó, después que ellos renunciaran, la Asamblea Municipal de la cual formaron parte. Este asunto no está contemplado en la ley. No obstante, en González v. Alcalde de Utuado, supra, aclaramos esta misma laguna que surgía también bajo la Ley Municipal de 1960. Resolvimos que en esos casos los asambleístas no se pueden beneficiar de los aumentos salariales.
En González v. Alcalde de Utuado, supra, un asambleísta pasó a ocupar un cargo municipal luego de renunciar a la Asamblea Municipal. Después de su renuncia, pero durante el período para el cual había sido electo, se aumentó el salario del cargo. El Secretario de Hacienda ordenó retener la cantidad correspondiente al aumento. El ex asambleísta solicitó una sentencia declaratoria que estableciera su derecho a disfrutar del aumento. El tribunal de instancia concluyó que las retenciones eran ilegales. La controversia llegó a nosotros, y nos cuestionamos en aquel momento si procedía que se le dedujera lo cobrado en ex-ceso a su sueldo antes del aumento. Resolvimos que sí, y revocamos al tribunal de instancia. Aunque no hicimos una expresión precisa sobre el asunto, se desprende de nuestra decisión que en esos casos no se puede disfrutar del aumento y que el ex asambleísta es responsable de reponer el dinero que haya recibido en contravención a la regulación municipal. Es la única solución cónsona con el propósito de la ley. Permitir que un ex asambleísta se beneficie del aumento legislado en estas circunstancias propendería a que los ex asambleístas utilicen sus influencias para obtener un beneficio personal de sus ex compañeros. Esto es precisamente lo que las leyes que regulan a los municipios han tratado de prevenir por casi 50 años. La sana administración de los gobiernos municipales no puede manipularse de *404 esta forma. Es por eso que resolvemos que el segundo aumento que disfrutaron los recurridos es contrario a nuestro ordenamiento, aunque la situación no esté contemplada específicamente por la Ley de Municipios Autónomos.
D. Por último, debemos expresarnos sobre la alegación de los recurridos, acogida por el Tribunal de Primera Instancia, de que no son ellos quienes deben responder en este caso. Los ex asambleístas aducen que según el Art. 11.027 de de la Ley de Municipios Autónomos, supra, les corresponde a los funcionarios que negligentemente aprobaron la acción de personal o el pago, devolver el dinero pagado en contravención a las disposiciones de la ley. Los ex asambleístas buscan de este modo que se mantenga la decisión de los foros inferiores de desestimar el pleito en su contra, y quedarse así con el dinero que fue pagado en exceso.
La posición de los recurridos es evidentemente incorrecta. En González v. Alcalde de Utuado, supra, ante la ausencia de una regulación precisa en la ley municipal, hicimos uso de la equidad y permitimos la retención en el salario que había hecho el alcalde al ex asambleísta, según se desprende de nuestra decisión, para recobrar lo pagado en exceso y para evitar que el ex asambleísta siguiese beneficiándose del aumento legislado por la Asamblea Municipal a la cual fue electo. De igual modo, en este caso debemos hacer uso de la equidad y de los principios generales del Derecho ante la ausencia de una disposición en la Ley de Municipios Autónomos que directamente provea un remedio para situaciones como la que tenemos ante nuestra consideración. Ya que hemos resuelto que la razón para no permitir que los ex asambleístas se beneficien del segundo aumento es evitar que éstos se aprovechen indebidamente de sus cargos, deben ser ellos los responsables de devolver el dinero recibido indebidamente. Permitir que retengan la porción de lo recibido equivalente a la mejora que legisló —después de su renuncia— la Asamblea Legislativa a la cual fueron electos, conlleva el consentir a que se aprove *405 chen de su posición, además de que constituiría un enriquecimiento injusto.
Por otra parte, el referido Art. 11.027 de la ley a la que se refieren los recurridos no pretende liberar a los ex asainbleístas de responsabilidad en casos como el de autos. Esto sería contrario al espíritu que permea toda la ley, cuyo objetivo, según explicáramos, es evitar que los miembros de las Asamblea Municipal se aprovechen de sus puestos. Los aumentos legislados por la Asamblea Municipal a la que pertenecieron los recurridos no podían ser disfrutados por los ex asambleístas, quienes son responsables del provecho indebido que derivaron de sus cargos. Por eso no procede, como sostienen los recurridos, que se desestime el pleito en su contra. Esta posición es cónsona con lo que resolvimos en González v. Alcalde de Utuado, supra, y con la política pública de la Ley de Municipios Autónomos.
III
Por todo lo anterior, se revocan las sentencias del Tribunal de Primera Instancia y del Tribunal de Apelaciones en cuanto que los recurridos pueden beneficiarse del segundo aumento otorgado mientras fueron asambleístas. Por otro lado, se confirma sus sentencias en cuanto a que no podían aprovecharse de los aumentos aprobados de acuerdo con el Plan de Clasificación de Puestos y Retribución Uniforme de 1993. Por último, se revoca la sentencia del Tribunal de Primera Instancia en cuanto desestimó la demanda contra los recurridos por entender que éstos no eran los llamados a responder, ya que, por el contrario, los recurridos deben responder por los beneficios recibidos en contravención a lo pautado en esta opinión.

Se dictará sentencia de conformidad.

El Juez Asociado Señor Fuster Berlingeri emitió una opinión concurrente en parte y disidente en parte.

 Así lo estableció el Tribunal de Primera Instancia en sus determinaciones de hechos.

 La Oficina del Contralor señala en su informe que el aumento para el Director de Obras Públicas ocurrió en julio de 1999, y el del Director de Recreación y Deportes ocurrió en enero de 2000. Esas fechas corresponden con los cambios en cantidades en los cheques expedidos a favor de los recurridos por el Municipio de Morovis, que constan en el expediente.

 El Art. 29 de la Ley Municipal de 1960, Ley Núm. 142 de 21 de julio de 1960, disponía:
“Todas las limitaciones impuestas por la Constitución del Estado Libre Asociado de Puerto Rico y por la Ley de Relaciones Federales con Puerto Rico a la Asamblea Legislativa y a sus miembros, serán aplicables, hasta donde fuere posible, a la asamblea municipal y a los miembros de la misma.” 21 L.P.R.A. see. 1171 (ed. 1961).

 El Art. 4.17 de la Ley Orgánica de los Municipios de Puerto Rico, Ley Núm. 146 de 18 de junio de 1980, establecía:
“Todas las limitaciones impuestas por la Constitución del Estado Libre Asociado de Puerto Rico y por la Ley de Relaciones Federales en Puerto Rico a la Asamblea Legislativa y a sus miembros, serán aplicables hasta donde fuere posible, a la asamblea municipal y a los miembros de la misma. Disponiéndose, que no será incompatible el ser miembro de las Asamblea y ocupar a la vez un empleo o cargo que no sea por elección en el Gobierno del Estado Libre Asociado de Puerto Rico, con excepción de lo establecido en el inciso (b) de la see. 3053 de este título.
“No será incompatible que miembros de las Asamblea puedan ocupar cargos administrativos o puestos en los municipios en que fueron electos, de renunciar a sus escaños legislativos siempre y cuando el cargo o puesto a ocupar no hubiere sido creado o mejorado en su sueldo durante el término por el cual fue electo o designado.” 21 L.P.R.A. see. 3067 (ed. 1988).

 El señor Gaztambide Arrillaga, en la discusión sobre este artículo, expresó que:
“La idea de esto es impedir que se acumulen en unas pocas manos varios sueldos. Que el prestigio de un legislador pueda explotarse de tal manera que reciba sueldos indebidos en más de una ocasión por los servicios que presta a su pueblo.” 2 Diario de Sesiones de la Convención Constituyente 779 (1961).
Por su parte el señor Reyes Delgado sostuvo lo siguiente:
‘Yo no creo, señor Presidente y señores delegados, que la prohibición de ocupar cargos sea meramente por el hecho de que se le pague compensación. Hay cosas más *401 importantes en la vida que la compensación, y [una es] la influencia que se ejerce, que es lo que se tiene en mente. El individuo, miembro de la [Asamblea] Legislativa, que está ejerciendo un cargo en el cual él no está recibiendo emolumento, pero que ejerce una terrible influencia, en las decisiones de la junta, del cuerpo, de la oficina, del negociado, de lo que fuere, debido a su condición de legislador.
“Lo que se interesa es que la influencia de él como legislador no llegue a ningún sitio.” (Corchetes en el original.) Diario de Sesiones, supra, pág. 780.