*406 Opinión concurrente en parte y disidente en parte emitida por el
Juez Asociado Señor Fuster serlingeri.
I
Como se señala en la opinión de la mayoría del Tribunal, en el caso de autos están en cuestión dos aumentos de salarios que fueron impugnados por el Contralor de Puerto Rico, por considerar éste que los funcionarios municipales concernidos no tenían derecho a ninguno de ellos. La mayoría del Tribunal entiende que los recurridos pueden disfrutar de uno de los aumentos en cuestión, pero no del otro.
Concurro con la mayoría en cuanto a que los funcionarios municipales referidos no podían beneficiarse de los aumentos de sueldo que fueron aprobados durante el término para el cual fueron electos, aunque ello sucedió luego de sus renuncias como asambleístas municipales. Disiento, sin embargo, en cuanto a que dichos funcionarios sí podían beneficiarse del otro aumento salarial en cuestión, que fue puesto en vigor mientras ellos formaban parte de la Legislatura Municipal, aunque legislado previamente. Veamos.
II
En marzo de 2002 el Municipio de Morovis (Municipio) demandó a los señores Ángel A. Adorno Marrero y Heriberto Rodríguez Adorno (recurridos), así como a sus respectivas Sociedades Legales de Bienes Gananciales. El Municipio reclamó el reembolso de ciertas cantidades pagadas a los recurridos en concepto de salarios mientras éstos fungieron como directores de dos dependencias municipales.
Los recurridos fueron electos asambleístas municipales de Morovis en el cuatrienio de 1997 al 2000. Según surge del expediente, mientras los recurridos aún ocupaban sus *407 escaños como asambleístas municipales, se aprobó la Resolución Núm. 52 Serie 1997-1998, mediante la cual entró en vigor el Presupuesto de Ingresos y Egresos del Municipio para el año fiscal 1998-1999. Con esta medida se puso en vigor y se hizo efectivo un plan de aumentos aprobado en el Plan de Clasificación de Puestos y Retribución Uniforme de 1993, y de ese modo se aumentó el salario mensual del Director de Obras Públicas Municipales de $1,926 a $2,025, y el del Director de Recreación y Deportes de $1,250 a $1,342 mensuales.
Posteriormente, en agosto de 1998, el recurrido Rodríguez Adorno renunció a su escaño legislativo y fue nombrado Director de Recreación y Deportes del Municipio. Por su parte, el recurrido Adorno Marrero renunció a su escaño como asambleísta a finales de enero de 1999 y fue nombrado Director de Obras Públicas del Municipio.
Así las cosas, cuando los recurridos ya no eran miembros de la Asamblea Municipal, pero antes de que expirara el término para el cual habían sido electos como asambleístas municipales, sus respectivos puestos ejecutivos fueron mejorados nuevamente en cuanto a salarios. En julio de 1999, la Asamblea Municipal aumentó el salario del Director de Obras Públicas en $550, para un total de $2,575 al mes, y en enero de 2000 aumentó en $196 la compensación para el Director de Recreación y Deportes, llevando su salario a un total de $1,538 mensuales.
A raíz del Informe de Auditoría M-02-09 rendido por el Contralor de Puerto Rico el 24 de septiembre de 2001, el Municipio presentó las demandas que dieron lugar al caso de autos. En el referido informe del Contralor se señalaron varias irregularidades cometidas durante el periodo comprendido entre el 1 de julio de 1997 y el 30 de junio de 2000 por el entonces Alcalde de Morovis, señor Russe González. La Oficina del Contralor concluyó que debido a que los sueldos para los puestos de Director de Obras Públicas y de Director de Recreación y Deportes habían sido aumentados *408 en dos ocasiones durante el referido cuatrienio, los recurridos ocuparon dichos puestos ilegalmente, y procedía entonces la devolución de la totalidad de los salarios percibidos por éstos.
Una vez finalizado el desfile de prueba, los recurridos solicitaron la desestimación de las demandas a tenor con la Regla 39.2(c) de Procedimiento Civil, 32 L.P.R.A. Ap. III. Según argumentaron los recurridos, el Municipio no tenía derecho a la concesión de ningún remedio, pues no demostró que ellos hubiesen actuado ilegalmente. Tras escuchar las alegaciones de las partes, el Tribunal de Primera Instancia concluyó que el Municipio peticionario no tenía derecho a remedio alguno y declaró “con lugar” la solicitud de desestimación.
El Municipio recurrió de esta determinación ante el Tribunal de Apelaciones el cual, tras ciertos incidentes procesales, confirmó al foro de primera instancia por los mismos fundamentos.
Inconforme, el Municipio acudió oportunamente ante nos y planteó, en síntesis, que había errado el Tribunal de Apelaciones al no aplicar nuestros precedentes y confirmar la sentencia dictada por el Tribunal de Primera Instancia, a pesar de que se presentó prueba suficiente para sostener las alegaciones de las demandas.
III
El Art. 4.004 de la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991, según enmendado por la Ley Núm. 81 de 29 de octubre de 1992, dispone, en lo pertinente, lo siguiente:
Las siguientes normas generales regirán la conducta de los legisladores municipales en todo aquello que se relacione directa o indirectamente con los deberes oficiales de su cargo:
(b) No podrán ser funcionarios ni empleados del municipio de cuya legislatura sean miembros. No obstante lo antes dis *409 puesto, cualquier legislador municipal que renuncie a su cargo como tal, podrá ocupar cualquier cargo o puesto de confianza o de carrera en el municipio en que fue electo, siempre y cuando se trate de un cargo o puesto que no haya sido creado o mejorado en su sueldo durante el término por el cual fue electo legislador municipal. (Énfasis suplido.) 21 L.P.R.A. see. 4154.
Según la citada disposición, es legítimo que un asambleísta renuncie a su escaño y pase a ocupar algún puesto en la administración municipal en tanto no pretenda beneficiarse de ningún aumento de sueldo realizado durante el término por el cual fue electo legislador municipal. El propósito de dicha disposición es evitar que una persona que haya sido legislador municipal se beneficie indebidamente del cargo para el cual fue electo. Dicho artículo aplica claramente a los aumentos salariales que aquí nos conciernen. Resulta evidente que los recurridos no podían beneficiarse de los aumentos de sueldo iniciales, aquellos que fueron puestos en vigor y así realizados mientras ellos formaban parte de la Legislatura Municipal. Los recurridos Rodríguez Adorno y Adorno Marrero tampoco podían beneficiarse de los aumentos de sueldo aprobados durante el término para el cual fueron electos, aunque fuesen posteriores a sus renuncias como asambleístas.
Para evaluar la controversia ante nos debemos tener presente el trasfondo histórico del Art. 4.004 de la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991, supra. Dicho trasfondo se extiende hasta la propia Constitución del Estado Libre Asociado de Puerto Rico, la cual dispone en la Sec. 15 de su Art. Ill, conocida como la “Cláusula de Incompatibilidad de Car-gos”, lo siguiente:
Ningún Senador o Representante podrá ser nombrado, durante el término por el cual fue electo o designado, para ocupar en el Gobierno de Puerto Rico, sus municipios o instrumentalidades, cargo civil alguno creado, o mejorado en su sueldo, durante dicho término. Ninguna persona podrá ocupar un cargo en el Gobierno de Puerto Rico, sus municipios o instrumentalidades y ser al mismo tiempo Senador o *410 Representante. Estas disposiciones no impedirán que un legislador sea designado para desempeñar funciones ad honorem. (Énfasis suplido.) Const. E.L.A., L.P.R.A., Tomo 1, ed. 1999, págs. 377-378.(1)
Dicha disposición constitucional fue incorporada en las distintas piezas legislativas que regulan a los municipios. Así por ejemplo, la Ley Núm. 142 de 21 de julio de 1960, conocida como la Ley Municipal, disponía en su Art. 29 (21 L.P.R.A. see. 1171 (ed. 1961) lo siguiente:
Todas las limitaciones impuestas por la Constitución del Estado Libre Asociado de Puerto Rico y por la Ley de Relaciones Federales con Puerto Rico a la Asamblea Legislativa y a sus miembros, serán aplicables, hasta donde fuere posible, a la asamblea municipal y a los miembros de la misma.
Dicho precepto también fue incluido en el Art. 4.17 de la Ley Núm. 146 de 18 de junio de 1980, conocida como la anterior Ley Orgánica de los Municipios de Puerto Rico, 21 L.P.R.A. see. 3067 (ed. 1988).
El citado Art. 4.004 de la vigente Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991, supra, ha incorporado esencialmente la misma norma. Por ende, para disponer de la controversia de autos debemos revisar la interpretación que anteriormente hemos hecho de la frase “durante el término por el cual fue electo o designado”.
En Cordero, Auditor v. Tribl. de Distrito, 72 D.P.R. 378, 385 (1951), dijimos que la aludida frase había sido empleada consistentemente por los redactores de distintas piezas legislativas “dondequiera que ... quisieron hacer que un legislador fuera inelegible durante todo el período *411 de tiempo por el cual fué electo, independientemente de su renuncia del escaño legislativo”. (Énfasis suplido.)(2)
Posteriormente, en González v. Alcalde de Utuado, 101 D.P.R. 47, 50 (1973), reafirmamos dicha interpretación y explicamos que un examen del Diario de Sesiones de la Convención Constituyente no revelaba “debate, comentario o discusión que en forma alguna indicase un sentir o interpretación de la frase ‘durante el término para el cual fue electo’ contrario al significado ‘consagrado por el uso’ ...”. íd., pág. 51.
Nótese que en el Art. 4.004 de la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991, supra, se adoptó la terminología en cuestión después de que ésta fuese interpretada por este Foro. Al así proceder, la Asamblea Legislativa escogió una frase cargada de significado, conforme al historial relatado antes. Es evidente que de no haber estado de acuerdo con ese significado y sus implicaciones, la Asamblea Legislativa hubiese empleado otras palabras.
No hay ninguna razón para variar hoy la interpretación que durante cinco décadas hemos dado a las disposiciones constitucionales y estatutarias que prohíbe a los legisladores (en este caso municipales) ocupar un cargo que haya sido creado o mejorado en su sueldo durante el término por el cual fueron electos legisladores. La interpretación es fiel a la intención de los que redactaron nuestra Constitución y de los integrantes de la Asamblea Legislativa, que sabiamente han querido adoptar una norma estricta para salvaguardar la sana administración gubernamental. No puede haber duda de que dicha norma fue incorporada íntegramente en el Art. 4.004 de la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991, supra.
*412 IV
Por las razones expresadas antes, concurro con el criterio de la mayoría del Tribunal en cuanto a que el aumento salarial aprobado específicamente durante el término para el cual los recurridos fueron electos asambleístas municipales —el segundo aumento— no los podía beneficiar. Pero me parece claro, además, que tampoco podían beneficiarse del aumento inicial, el que se puso en vigor precisamente siendo los recurridos miembros de la Asamblea Municipal. Es cierto que ese aumento fue legislado en concepto por una Asamblea Municipal anterior, pero se puso en vigor y se le dio existencia por la Asamblea Municipal a la que pertenecían los recurridos. No puede negarse, pues, que fue precisamente con el voto de los recurridos que se le dio actualidad y se hizo real el aumento salarial en cuestión. Los cargos en cuestión fueron “mejorados en su sueldo” por los recurrentes, ya que fueron éstos quienes hicieron efectivos los aumentos referidos. Me parece evidente que no podían beneficiarse de un resultado que ellos mismos fraguaron. En términos prácticos, los recurrentes tuvieron mucho más que ver con respecto al aumento inicial que en cuanto al segundo de los aumentos que aquí nos conciernen. Si este aumento les está vedado, no tiene sentido lógico decretar que pueden beneficiarse del primer aumento. No debe olvidarse, según lo ha indicado el profesor Trías Monge, que lo que se procura evitar es que el funcionario se beneficie de su propio acto legislativo. Véase el escolio 1 de esta ponencia y el texto allí citado. Tal beneficio vedado ocurriría aquí si se le permite a los recurridos que se beneficien del aumento inicial en cuestión, que ellos mismos legislaron cuando eran miembros de la Asamblea Municipal.
Aparte de lo anterior, la interpretación esbozada aquí por la mayoría, llevada hasta sus últimas consecuencias, conduciría a resultados insólitos o a anular la prohibición *413 en cuestión. La mayoría resuelve que los recurridos pueden disfrutar del primer aumento o mejora, aunque se puso en vigor durante su incumbencia, dado que dicha mejora fue legislada antes de que ellos fueran miembros de la Asamblea Municipal. Esto implica que la prohibición operaría para los miembros de la asamblea electos para el cuatrienio en que fue “legislado” el aumento. El problema con lo anterior es que ya que el aumento en cuestión no estuvo en vigor durante el cuatrienio en el cual fue legislado, el resultado práctico sería, o bien prohibir que un ex legislador municipal ocupe un puesto que realmente no ha sido mejorado en sueldo, o dictaminar que la prohibición no aplica ni a los que legislaron el aumento ni a los que lo pusieron en vigor. Tales opciones son evidentemente insostenibles.
Como entiendo que el dictamen mayoritario descansa en puro conceptualismo y no es compatible con el principio normativo que aquí aplicamos, yo disiento de esta parte de ese dictamen.

 Se ha comentado lo siguiente sobre esta sección:
“[L]a intención evidente fue permitir, en el caso de posiciones mejoradas en sueldo, que desapareciese el impedimento si el legislador renunciaba no solamente su cargo sino el beneficio económico derivable del aumento en compensación en el cargo concernido, ya que lo que anima la prohibición en esta instancia es evitar que el legislador se beneficie individualmente de sus propios actos legislativos." (Énfasis suplido.) J. Trías Monge, Historia Constitucional de Puerto Rico, Río Piedras, Ed. U.P.R., 1982, Vol. III, pág. 157.

 Así por ejemplo, cuando Jorge Font Saldaña fue nombrado Secretario de Hacienda, éste renunció “hasta la expiración del término por el cual había sido electo” al aumento de sueldo que se había aprobado para dicho cargo mientras servía como legislador. Trías Monge, op. cit., pág. 157 esc. 109.