EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Municipio de Morovis<br>    Peticionario<br><br>        v.<br><br> Ángel A. Adorno Marrero, etc.<br>     Recurridos<br>_____<br> Municipio de Morovis<br>    Peticionario<br><br>        v.<br><br> Heriberto Rodríguez Adorno, etc.<br>     Recurridos | Certiorari<br><br>2006 TSPR 160<br><br>169 DPR ____ |

Número del Caso: CC-2004-0891

Fecha: 31 de octubre de 2006

Tribunal de Apelaciones:

         Región Judicial de Arecibo


Juez Ponente:
             Hon. Roberto González Rivera



Abogado de la Parte Recurrida:

             Lcdo. Fernando L. Galllardo




Materia: Cobro de Dinero

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Municipio de Morovis
      Peticionario

*Certiorari*

     v.

Ángel A. Adorno Marrero, etc.     CC-2004-891
      Recurridos
_____

Municipio de Morovis
      Peticionario

     v.

Heriberto Rodríguez Adorno, etc.
      Recurridos

Opinión del Tribunal emitida por la JUEZA ASOCIADA SEÑORA FIOL MATTA

En San Juan, Puerto Rico, a 31 de octubre de 2006.

El presente caso nos permite expresarnos sobre el alcance de la prohibición contenida en el artículo 4.004 de la Ley de Municipios Autónomos, 21 L.P.R.A. § 4154 (2005), en cuanto a que un asambleísta que renuncie a su escaño no puede, durante el término por el cual fue electo legislador municipal, ocupar puestos municipales de confianza o de carrera en el municipio en que fue electo si éstos fueron creados o mejorados en su sueldo durante dicho término. Por las razones que exponemos a continuación, reafirmamos la norma del caso de <u>González v. Alcalde de Utuado</u>, 101 D.P.R. 47 (1973), y resolvemos además que un ex-asambleísta que ocupe un cargo municipal luego de su renuncia al escaño político no debe disfrutar de un beneficio legislado después de su renuncia

por la Asamblea de la cual formó parte, y debe devolver el dinero que haya recibido en contravención a esta norma. No obstante, aclaramos que esta prohibición no aplica cuando el beneficio se legisla antes de que el asambleísta sea parte de la asamblea municipal o por una asamblea municipal de la cual no formó parte, aunque entre en efecto durante el cuatrienio para el cual fue electo.

## I

Los hechos del presente caso son los siguientes. En el mes de marzo de 2002 el Municipio de Morovis, luego de un informe de la Oficina del Contralor Puerto Rico, demandó en cobro de dinero a los recurridos, el señor Rodríguez Adorno y el señor Adorno Marrero. El Municipio reclamaba el reembolso de los salarios que recibieron los recurridos por los servicios que prestaron como empleados de confianza, por entender que sus nombramientos fueron contrarios al artículo 4.004 de la Ley de Municipios Autónomos, 21 L.P.R.A. § 4154 (2005). Posteriormente, el Municipio de Morovis enmendó su demanda para reclamar, no la totalidad de los salarios, sino la diferencia entre los salarios de los puestos antes de que empezara el cuatrienio de 1997-2000 y los aumentos recibidos durante ese cuatrienio. Esto debido a que los recurridos fueron asambleístas durante un período del cuatrienio durante el cual se hicieron efectivos los aumentos para sus puestos.

Los eventos que propiciaron la controversia fueron los siguientes. El señor Rodríguez Adorno fue electo asambleísta para el cuatrienio de 1997-2002. Antes de esto había servido como asambleísta desde el 13 de mayo de 1994 cuando entró a llenar una vacante que surgió para su partido en la Asamblea del pueblo de Morovis. El 11 de

agosto de 1998, efectivo al 31 de agosto de 1998, éste renuncio al cargo de asambleísta; y el 16 de septiembre de 1998 fue nombrado al puesto de confianza de Director del Departamento de Recreación y Deportes Municipal. El señor Adorno Marrero también fue electo asambleísta para el cuatrienio de 1997-2002. Éste renunció a dicho cargo el 21 de enero de 1999, efectivo ese mismo día, al cargo de asambleísta; y el 11 de mayo de 1999 fue nombrado al puesto de confianza de Director de Obras Públicas.

Durante el año fiscal 1992-1993, la Asamblea Legislativa de Morovis aprobó el Plan de Clasificación de Puestos y Retribución Uniforme, que disponía de unos aumentos durante el cuatrienio de 1997-2000 para los puestos de confianza que existiesen en el Municipio.[1] El 15 de enero de 1993, conforme a la nueva Ley de Municipios Autónomos de 1991, la Asamblea de Morovis actualizó la Ordenanza de Puestos de Confianza e incluyó entre los puestos de confianza los cargos que eventualmente ocuparían los recurridos. *Véase* Ordenanza núm. 11 Serie 1992-93 del Municipio de Morovis. Mientras los recurridos formaban parte de la Asamblea Municipal de Morovis, ésta aprobó la Resolución Núm. 52, serie 1997-98, que establecía el presupuesto del Municipio para el año fiscal 1998-99 y se hacía entrar en vigor con este presupuesto el plan de aumentos aprobado en el Plan de Clasificación de Puestos y Retribución Uniforme de 1993. Luego de que los recurridos renunciaran a la asamblea municipal y se encontraran ocupando sus nuevos puestos, que eran cargos de confianza, la Asamblea de la cual habían formado parte aprobó la Resolución núm. 3 Serie 1999-2000 mediante la

---

[1] Así lo estableció el Tribunal de Primera Instancia en sus determinaciones de hechos.

cual se aumentaron, efectivo el 1$^{\text{ro}}$ de julio de 1999, las escalas salariales de varios puestos de confianza, entre ellos los puestos de los recurridos.[2]

Al concluir la presentación de la prueba del Municipio, los recurridos solicitaron la desestimación del caso. El Tribunal de Primera Instancia accedió por entender que no se había violado el artículo 4.004 de la Ley de Municipios Autónomos, *supra*, ya que el primer aumento cuestionado obedeció al Plan de Clasificación de Puestos y Retribución Uniforme que aprobó una Asamblea Legislativa de la cual los recurridos no formaban parte y el segundo aumento fue hecho por la Asamblea Legislativa de Morovis de la cual ellos formaban parte, pero no mientras ellos fueron miembros de ésta. Concluyó el tribunal que ellos no participaron de la aprobación de ninguno de los aumentos, por lo cual no estaban sujetos a la prohibición del artículo 4.004, *supra*. El Tribunal de Primera Instancia entendió también que la causa de acción del municipio debía ser desestimada pues los recurridos no eran los llamados a responder según el artículo 11.027 de de la Ley de Municipios Autónomos, 21 L.P.R.A. § 4576 (2005). El Municipio acudió al Tribunal de Apelaciones, el cual confirmó la decisión del foro de instancia por entender que los ex-asambleístas no estaban sujetos a la prohibición del artículo 4.004, *supra*, ya que no participaron de la aprobación de ninguno de los aumentos.

---

[2] La Oficina del Contralor señala en su informe que el aumento para el Director de Obras Públicas ocurrió en julio de 1999 y el del Director de Recreación y Deportes en enero de 2000. Esas fechas corresponden con los cambios en cantidades en los cheques expedidos a favor de los recurridos por el Municipio de Morovis que constan en el expediente.

Por esa razón el Municipio de Morovis acude ante nosotros, y nos plantea que se equivocaron el foro apelativo y el de instancia al resolver contrario a nuestra decisión en González v. Municipio de Utuado, 101 D.P.R. 47 (1973). Por su parte, los recurridos sostienen que no se ha violado el artículo 4.004 de la Ley de Municipios Autónomos, *supra*, ya que ellos no participaron en la aprobación de ninguno de los aumentos. En la alternativa plantean que no son ellos los llamados a responder por la violación puesto que según el artículo 11.027 de de la Ley de Municipios Autónomos, *supra*, le corresponde a los funcionarios que negligentemente aprobaron la acción de personal o el pago, devolver el dinero pagado en contravención a las disposiciones de la ley.

Ante estos hechos y los planteamientos de las partes debemos resolver las siguientes cuestiones. Primero, si la prohibición del artículo 4.004 de la Ley de Municipios Autónomos, *supra*, aplica cuando la mejora al puesto municipal ha sido legislada antes de que el asambleísta entre a formar parte de la Asamblea Municipal, pero entra en efecto durante el período para el cual éste fue electo. También, debemos decidir si el artículo antes mencionado aplica cuando se ocupa un puesto una vez se renuncia al cargo de asambleísta y la Asamblea Municipal a la cual se renunció legisla un aumento. De responderse alguna de las preguntas en la afirmativa, debemos determinar quiénes son los responsables en devolver el dinero que se pagó en contravención de la ley.

II

A

La Ley de Municipios Autónomos contiene varias normas que procuran mantener la pureza de las acciones municipales y de sus funcionarios, en especial de los asambleístas. Entre esas normas se encuentran el artículo 4.004 y el artículo 11.027, *supra*. El artículo 4.004, *supra*, en lo pertinente a este caso dispone que:

> Las siguientes normas generales regirán la conducta de los legisladores municipales en todo aquello que se relacione directa o indirectamente con los deberes oficiales de su cargo:
> . . . .
> (b) No podrán ser funcionarios ni empleados del municipio de cuya legislatura sean miembros. No obstante lo antes dispuesto, cualquier legislador municipal que renuncie a su cargo como tal, podrá ocupar cualquier cargo o puesto de confianza o de carrera en el municipio en que fue electo, siempre y cuando se trate de un cargo o puesto que no haya sido creado o mejorado en su sueldo durante el término por el cual fue electo legislador municipal.
> . . . .

Por su parte el artículo 11.027, *supra*, provee que:

> . . . .
> (b) Cualquier suma de dinero pagada en relación con acciones de personal en contravención con las disposiciones de este subtítulo, de los reglamentos o de las normas aprobadas conforme al mismo, será recuperada del funcionario o empleado que, por descuido o negligencia, aprobare o refrendare la acción de personal o de aquel que aprobare dicho pago, o que suscribiere o refrendare el comprobante, nóminas, cheque u orden de pago; o de las fianzas de dicho funcionario. Los dineros así recuperados se reintegrarán al tesoro del municipio correspondiente, según sea el caso.
> . . . .

La primera de estas disposiciones de la Ley de Municipios autónomos proviene de la sección 15 del artículo III de nuestra Constitución. Antes de que se adoptara la ley de municipios vigente, la Ley Municipal de 1960 contenía la misma prohibición. No obstante, esta

prohibición se incluyó haciendo referencia directa a la disposición constitucional.[3] Entre las limitaciones de las que hablaba este artículo de la Ley Municipal de 1960 se encontraba la de la sección 15 del artículo III de nuestra Constitución. Esta sección establece que:

> Ningún Senador o Representante podrá ser nombrado, durante el término por el cual fue electo o designado, para ocupar en el Gobierno de Puerto Rico, sus municipios o instrumentalidades, cargo civil alguno creado, o mejorado en su sueldo, durante dicho término. Ninguna persona podrá ocupar un cargo en el Gobierno de Puerto Rico, sus municipios o instrumentalidades y ser al mismo tiempo Senador o Representante. Estas disposiciones no impedirán que un legislador sea designado para desempeñar funciones *ad honorem*.

Esta prohibición continuó formando parte de la reglamentación a la cual estaban sujetos los asambleístas cuando se derogó la Ley Municipal de 1960 y se adoptó la Ley orgánica de los municipios de Puerto Rico de 1980.[4]

---

[3] El artículo 29 de la Ley Municipal de 1960, Ley núm. 142 de 21 de julio de 1960, disponía que:
> Todas las limitaciones impuestas por la Constitución del Estado Libre Asociado de Puerto Rico y por la Ley de Relaciones Federales con Puerto Rico a la Asamblea Legislativa y a sus miembros, serán aplicables, hasta donde fuere posible, a la asamblea municipal y a los miembros de la misma.

[4] El artículo 4.17 de la Ley orgánica de los municipios de Puerto Rico de 1980, Ley núm. 146 de 18 de junio de 1980, establecía que:
> Todas las limitaciones impuestas por la Constitución del Estado Libre Asociado de Puerto Rico y por la Ley de Relaciones Federales con Puerto Rico a la Asamblea Legislativa y a sus miembros, serán aplicables, hasta donde fuere posible, a la asamblea municipal y a los miembros de la misma. Disponiéndose, que no será incompatible el ser miembro de las Asamblea y ocupar a la vez un empleo o cargo que no sea por elección en el Gobierno del Estado Libre Asociado de Puerto Rico, con
>
> excepción de lo establecido en el apartado (b) del Artículo 4.03 de esta ley.

Además con esta ley, al igual que en la regulación
vigente, se dejó claro que, como excepción a la norma de
que los asambleístas no pueden ocupar otros puestos en el
municipio durante el término para el cual fueron electos,
una vez los asambleístas renuncian al cargo pueden ocupar
un cargo municipal siempre y cuando el cargo o puesto a
ocupar no hubiere sido creado o mejorado en su sueldo
durante el término por el cual fue electo o designado.

El propósito de todas estas legislaciones es dual. De
una parte se trata de evitar que se acumulen en unas pocas
manos varios sueldos. También se intenta impedir que los
legisladores se beneficien de las influencias que pueden
tener mientras están en su cargo y aún después.[5] Con esto

---

> No será incompatible que miembros de las
> Asamblea puedan ocupar cargos
> administrativos o puestos en los municipios
> en que fueron electos, de renunciar a sus
> escaños legislativos, siempre y cuando el
> cargo o puesto a ocupar no hubiere sido
> creado o mejorado en su sueldo, durante el
> término por el cual fue electo o designado.

[5] El señor Gaztmabide Arrillaga en la discusión sobre este
artículo expresó que:
. . . .
> La idea de esto es impedir que se acumulen
> en unas pocas manos varios sueldos. Que el
> prestigio de un legislador pueda explotarse
> de tal manera que reciba sueldos indebidos
> en más de una ocasión por los servicios que
> presta a su sueldo. . . .

2 Diario de Sesiones de la Convención Constituyente de
Puerto Rico 779 (1961).
Por su parte el señor Reyes Delgado sostuvo lo siguiente:

> Yo no creo, señor Presidente y señores
> delegados, que la prohibición de ocupar
> cargos sea meramente por el hecho de que se
> le pague compensación. Hay cosas más
> importantes en la vida que la compensación,
> y [una es] la influencia que se ejerce, que
> es lo que se tiene en mente. El individuo,
> miembro de la [Asamblea] Legislativa, que
> está ejerciendo un cargo en el cual él no
> está recibiendo emolumento, pero que ejerce
> una terrible influencia, en las decisiones
> de la junta, del cuerpo, de la oficina, del

en mente fue que los redactores de la constitución decidieron extender la prohibición a la ocupación de dos cargos públicos no sólo durante el tiempo mientras se ejercía el cargo legislativo sino por todo el término para el cual se fue electo.

En Cordero, Auditor v. Tribunal de Distrito, 72 D.P.R. 378, (1951), interpretando la sección 15 del artículo III de nuestra Constitución, resolvimos que la frase "durante el tiempo por el cual hubiere sido electo" se utilizó porque los redactores de la Constitución quisieron que los legisladores fueran inelegibles durante todo el período de tiempo por el cual fueron electos, independientemente de que hubiesen renunciado a su escaño. Asimismo hemos resuelto que los redactores, al adoptar esa frase, quisieron **prohibir absolutamente** el que un senador o representante ocupe un cargo civil en el gobierno de Puerto Rico, sus municipios o instrumentalidades, que haya sido creado o mejorado en su sueldo durante el término por el cual fue electo. González v. Alcalde de Utuado, 101 D.P.R. 47 (1973). Al mismo tiempo, en González v. Alcalde de Utuado, *supra*, extendimos esta prohibición a los asambleístas municipales, ya que la Ley Municipal de 1960, vigente para la fecha del caso, se refería directamente a la prohibición constitucional. Esta prohibición permaneció en la Ley orgánica de los municipios de Puerto Rico y en la actual Ley de Municipios Autónomos.

---

negociado, de lo que fuere debido a su condición de legislador.
Lo que se interesa es que la influencia de él como legislador no llegue a ningún sitio. . . .

2 Diario de Sesiones de la Convención Constituyente de Puerto Rico 780 (1961).

De igual modo, continua vigente la norma que permite a los miembros de la Asamblea Municipal renunciar a sus escaños legislativos para ocupar cargos administrativos o puestos en los municipios en que fueron electos, siempre y cuando el cargo o puesto no se hubiere creado o mejorado en su sueldo, durante el término por el cual fue electo o designado. En otras palabras, la ley establece claramente que la única forma para un asambleísta ocupar un cargo administrativo o un puesto municipal durante el término para el cual fue electo es, primeramente, renunciando al puesto de asambleísta y en segundo lugar, que el cargo que vaya a ocupar no haya sido mejorado o creado durante el término para el cual él fue electo asambleísta. En cuanto a esta prohibición establecimos que se trataba de una prohibición absoluta.

B

Hoy, debemos resolver si la norma dispuesta en el artículo 4.004 de la Ley de Municipios Autónomos, *supra*, se refiere solamente a una mejora legislada durante el término por el cual fue electo el ex-asambleísta o se refiere también a una que haya entrado en efecto durante ese período. No hay duda, que debido al propósito de la ley, la prohibición aplica cuando la mejora fue legislada durante el período para el cual el asambleísta fue electo, aunque él no haya participado en su aprobación por haber renunciado antes de vencerse su término. Lo que se pretende evitar en esos casos es que el asambleísta haga uso de las influencias que se derivan de su puesto. Este peligro no existe cuando el asambleísta no tuvo ninguna relación con la Asamblea Municipal que legisló la mejora o que creó el cargo, por lo que la prohibición no debe

aplicar a mejoras legisladas en períodos anteriores a aquél para el cual fue electo el asambleísta. En la controversia ante nosotros, por ejemplo, el Tribunal de Primera Instancia determinó que uno de los aumentos reclamados obedeció al Plan de Clasificación de Puestos y Retribución Uniforme del municipio de Morovis, legislado por una Asamblea Municipal anterior. No se puede sostener, por tanto, que los primeros aumentos que se otorgaron a los recurridos en este caso estén prohibidos por la ley. En vista de ello resolvemos que no vienen obligados a rembolsar lo recibido por ese aumento.

C

Por otra parte, queda la cuestión de si los recurridos podrían beneficiarse de los aumentos que aprobó, después que ellos renunciaran, la Asamblea Municipal de la cual formaron parte. Este asunto no está contemplado en la ley. No obstante, en González v. Alcalde de Utuado, *supra*, aclaramos esta misma laguna que surgía también bajo la Ley Municipal de 1960. Resolvimos que en esos casos los asambleístas no se pueden beneficiar de los aumentos salariales.

En González v. Alcalde de Utuado, *supra*, un asambleísta pasó a ocupar un cargo municipal luego de renunciar a la Asamblea Municipal. Después de su renuncia, pero durante el período para el cual había sido electo se aumentó el salario del cargo. El Secretario de Hacienda ordenó retener la cantidad correspondiente al aumento. El ex-asambleísta solicitó una sentencia declaratoria que estableciera su derecho a disfrutar del aumento. El tribunal de instancia concluyó que las retenciones eran ilegales. La controversia llegó a nosotros, y nos

cuestionamos en aquél momento si era procedente que se le dedujera lo cobrado en exceso a su sueldo antes del aumento. Resolvimos que sí, y revocamos al tribunal de instancia. Aunque no hicimos una expresión precisa sobre el asunto, se desprende de nuestra decisión que en esos casos no se puede disfrutar del aumento y que el ex-asambleísta es responsable de reponer el dinero que haya recibido en contravención a la regulación municipal. Es la única solución cónsona con el propósito de la ley. Permitir que un ex-asambleísta se beneficie del aumento legislado en estas circunstancias propendería a que los ex-asambleístas utilicen sus influencias para obtener un beneficio personal de sus ex-compañeros. Esto es precisamente lo que las leyes que regulan a los municipios han tratado de prevenir por casi 50 años. La sana administración de los gobiernos municipales no puede manipularse de esta forma. Es por eso que resolvemos que el segundo aumento que disfrutaron los recurridos es contrario a nuestro ordenamiento, aunque la situación no esté contemplada específicamente por la Ley de Municipios Autónomos.

D

Por último, debemos expresarnos sobre la alegación de los recurridos, acogida por el Tribunal de Primera Instancia, de que no son ellos quienes deben responder en este caso. Los ex-asambleístas aducen que según el artículo 11.027 de de la Ley de Municipios Autónomos, 21 L.P.R.A., *supra*, les corresponde a los funcionarios que negligentemente aprobaron la acción de personal o el pago, devolver el dinero pagado en contravención a las disposiciones de la ley. Los ex-asambleístas buscan de

este modo que se mantenga la decisión de los foros inferiores de desestimar el pleito en su contra, y quedarse así con el dinero que fue pagado en exceso.

La posición de los recurridos es evidentemente incorrecta. En González v. Alcalde de Utuado, *supra*, ante la ausencia de una regulación precisa en la ley municipal hicimos uso de la equidad y permitimos la retención en el salario que había hecho el alcalde al ex-asambleísta, según se desprende de nuestra decisión, para recobrar lo pagado en exceso y para evitar que el ex-asambleísta siguiese beneficiándose del aumento legislado por la Asamblea Municipal a la cual fue electo. De igual modo, en el presente caso debemos hacer uso de la equidad y de los principios generales del derecho ante la ausencia de una disposición en la Ley de Municipios Autónomos que directamente provea un remedio para situaciones como la que tenemos ante nuestra consideración. Ya que hemos resuelto que la razón para no permitir que los ex-asambleístas se beneficien del segundo aumento es evitar que éstos se aprovechen indebidamente de sus cargos, deben ser ellos los responsables de devolver el dinero recibido indebidamente. Permitir que retengan la porción de lo recibido equivalente a la mejora que legisló, después de su renuncia, la Asamblea Legislativa a la cual fueron electos conlleva el consentir a que se aprovechen de su posición, además de que constituiría un enriquecimiento injusto.

Por otra parte, el artículo 11.027 de la Ley a la que se refieren los recurridos no pretende liberar a los ex-asambleístas de responsabilidad en casos como el de autos. Esto sería contrario al espíritu que permea toda la ley,

cuyo objetivo, según explicáramos, es evitar que miembros de las Asamblea Municipal se aprovechen de sus puestos. Los aumentos legislados por la Asamblea Municipal a la que pertenecieron los recurridos no podían ser disfrutados por los ex-asambleístas, quienes son responsables del provecho indebido que derivaron de sus cargos. Por eso, no procede, como sostienen los recurridos, que se desestime el pleito en su contra. Esta posición es cónsona con lo que resolvimos en González v. Alcalde de Utuado, *supra*, y con la política pública de la Ley de Municipios Autónomos.

## III

Por todo lo anterior, se revocan las sentencias del Tribunal de Primera Instancia y del Tribunal de Apelaciones en cuanto que los recurridos pueden beneficiarse del segundo aumento otorgado mientras fueron asambleístas. Por otro lado, se confirma sus sentencias en cuanto a que no podían aprovecharse de los aumentos aprobados de acuerdo al Plan de Clasificación de Puestos y Retribución Uniforme de 1993. Por último, se revoca la sentencia del Tribunal de Primera Instancia en cuanto desestimó la demanda contra los recurridos por entender que éstos no eran los llamados a responder, ya que por el contrario, los recurridos deben responder por los beneficios recibidos en contravención a lo pautado en esta opinión. Se dictará sentencia de conformidad.

Liana Fiol Matta
Jueza    Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Municipio de Morovis
      Peticionario
     *Certiorari*

      v.

Ángel A. Adorno Marrero, etc.      CC-2004-891
      Recurridos
_____

Municipio de Morovis
      Peticionario

      v.

Heriberto Rodríguez Adorno, etc.
      Recurridos


SENTENCIA


En San Juan, Puerto Rico, a 31 de octubre de 2006.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, se revocan las sentencias del Tribunal de Primera Instancia y del Tribunal de Apelaciones en cuanto que los recurridos pueden beneficiarse del segundo aumento otorgado mientras fueron asambleístas. Por otro lado, se confirman sus sentencias en cuanto a que podían aprovecharse de los aumentos aprobados de acuerdo al Plan de Clasificación de Puestos y Retribución Uniforme de 1993.

Por último, se revoca la sentencia del Tribunal de Primera Instancia en cuanto desestimó la demanda contra los recurridos por entender que éstos no eran los llamados a responder, ya que por el contrario, los recurridos deben responder por los beneficios recibidos en contravención a lo pautado en esta opinión.

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal. El Juez Asociado señor Fuster Berlingeri emitió opinión concurrente en parte y disidente en parte.

      Aida Ileana Oquendo Graulau
      Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Municipio de Morovis

    Peticionario

      Vs.

                                  CC-2004-891

Certiorari
Angel A. Adorno Marrrero, Etc.
    Recurridos
------------------------------
Municipio de Morovis
    Peticionario
      Vs.
Heriberto Rodríguez Adorno, Etc.
    Recurridos

Opinión Concurrente en parte y Disidente en parte emitida por el Juez Asociado señor FUSTER BERLINGERI.


San Juan, Puerto Rico, a 31 de octubre de 2006.


**I.**

Como se señala en la opinión de la mayoría del Tribunal, en el caso de autos están en cuestión **dos aumentos** de salarios que fueron impugnados por el Contralor de Puerto Rico, por considerar éste que los funcionarios municipales concernidos no tenían derecho a ninguno de ellos. La mayoría del Tribunal entiende que los recurridos pueden disfrutar de uno de los aumentos en cuestión pero no del otro.

Concurro con la mayoría en cuanto a que los funcionarios municipales referidos no podían beneficiarse de los aumentos de sueldo que fueron aprobados durante el término para el cual fueron

electos aunque ello sucedió luego de sus renuncias como asambleístas municipales. Disiento, sin embargo, en cuanto a que dichos funcionarios sí podían beneficiarse del otro aumento salarial en cuestión, **que fue puesto en vigor mientras ellos formaban parte de la Legislatura Municipal aunque legislado previamente**. Veamos.

## II.

En marzo de 2002 el Municipio de Morovis (en adelante el Municipio) demandó a los señores Ángel A. Adorno Marrero y Heriberto Rodríguez Adorno (en adelante los recurridos), así como a sus respectivas sociedades legales de bienes gananciales. El Municipio reclamó el reembolso de ciertas cantidades pagadas a los recurridos en concepto de salarios mientras éstos fungieron como directores de dos dependencias municipales.

Los recurridos fueron electos asambleístas municipales de Morovis en el cuatrienio de 1997 al 2000. Según surge del expediente, **mientras los recurridos aún ocupaban sus escaños como asambleístas municipales**, se aprobó la Resolución Núm. 52, serie 1997-1998, mediante la cual entró en vigor el Presupuesto de Ingresos y Egresos del Municipio para el año fiscal 1998-1999. Con esta medida se puso en vigor y se hizo efectivo un plan de aumentos aprobado en el Plan de Clasificación y Retribución de 1993 y de ese modo se aumentó el salario mensual del Director de Obras Públicas Municipales de $1,926 a $2,025 y el del Director de Recreación y Deportes de $1,250 a $1,342 mensuales.

Posteriormente, en agosto de 1998, el recurrido Rodríguez Adorno renunció a su escaño legislativo y fue nombrado Director de Recreación y Deportes del Municipio. Por su parte, el recurrido Adorno Marrero renunció a su escaño como asambleísta a finales de enero de 1999 y fue nombrado Director de Obras Públicas del Municipio.

Así las cosas, cuando los recurridos ya no eran miembros de la Asamblea Municipal, pero antes de que expirara el término para el cual habían sido electos como asambleístas municipales, sus respectivos puestos ejecutivos fueron mejorados nuevamente en cuanto a salarios. En julio de 1999, la Asamblea Municipal aumentó el salario del Director de Obras Públicas en $550, para un total de $2,575 al mes, y en enero de 2000 aumentó en $196 la compensación para el Director de Recreación y Deportes, llevando su salario a un total de $1,538 mensuales.

A raíz del Informe de Auditoria M–02–09 rendido por el Contralor de Puerto Rico el 24 de septiembre de 2001, el Municipio presentó las demandas que dieron lugar al caso de autos. En el referido Informe del Contralor se señalaron varias irregularidades cometidas durante el periodo comprendido entre el 1 de julio de 1997 y el 30 de junio de 2000 por el entonces Alcalde de Morovis, señor Russe González. La Oficina del Contralor concluyó que debido a que los sueldos para los puestos de Director de Obras Públicas y de Recreación y Deportes habían sido aumentados **en dos ocasiones** durante el referido cuatrienio, los

recurridos ocuparon dichos puestos ilegalmente, y procedía la devolución de la totalidad de los salarios percibidos por éstos.

Una vez finalizado el desfile de prueba, los recurridos solicitaron la desestimación de las demandas a tenor con la Regla 39.2(c) de Procedimiento Civil. 32 LPRA Ap. III. Según argumentaron los recurridos, el Municipio no tenía derecho a la concesión de ningún remedio, pues no demostró que ellos hubiesen actuado ilegalmente. Tras escuchar las alegaciones de las partes, el Tribunal de Primera Instancia concluyó que el Municipio peticionario no tenía derecho a remedio alguno y declaró con lugar la solicitud de desestimación.

El Municipio recurrió dicha determinación ante el Tribunal de Apelaciones el cual, tras ciertos incidentes procesales, confirmó al foro de primera instancia por los mismos fundamentos.

Inconforme, el Municipio acudió oportunamente ante nos y planteó, en síntesis, que había errado el Tribunal de Apelaciones al no aplicar nuestros precedentes y confirmar la sentencia dictada por el Tribunal de Primera Instancia, a pesar de que se presentó prueba suficiente para sostener las alegaciones de las demandas.

### III.

El artículo 4.004 de la Ley Núm. 81 del 29 de octubre de 1992, conocida como Ley de Municipios Autónomos dispone, en lo pertinente, lo siguiente:

Las siguientes normas generales regirán la conducta de los legisladores municipales en todo aquello que se relacione directa o indirectamente con los deberes de su cargo:

(a)...

(b)No podrán ser funcionarios ni empleados de un municipio de cuya legislatura sean miembros. No obstante lo antes dispuesto, cualquier legislador municipal que renuncie a su cargo como tal, podrá ocupar cualquier cargo o puesto de confianza o de carrera en el municipio en que fue electo, **siempre y cuando se trate de un cargo o puesto que no haya sido creado o mejorado en su sueldo <u>durante el término por el cual fue electo legislador municipal</u>**. (Énfasis añadido). 21 L.P.R.A. § 4154.

Según la citada disposición, es legítimo que un asambleísta renuncie a su escaño y pase a ocupar algún puesto en la administración municipal en tanto no pretenda beneficiarse de ningún aumento de sueldo realizado durante el término por el cual fue electo legislador municipal. El propósito de dicha disposición es evitar que una persona que haya sido legislador municipal se beneficie indebidamente del cargo para el cual fue electo. Dicho artículo es claramente aplicable a los aumentos salariales que aquí nos conciernen. **Resulta evidente que los recurridos no podían beneficiarse de los aumentos de sueldo iniciales, aquéllos que fueron <u>puestos en vigor y así realizados mientras ellos formaban parte de la Legislatura Municipal</u>.**

**Los recurridos Rodríguez Adorno y Adorno Marrero tampoco podían beneficiarse de los aumentos de sueldo aprobados durante el término para el cual fueron electos,**

**aunque fuesen posteriores a sus renuncias como asambleístas**.

Para evaluar la controversia ante nos debemos tener presente el trasfondo histórico del Artículo 4.004 de la Ley de Municipios Autónomos, *supra*. Dicho trasfondo se extiende hasta la propia Constitución del Estado Libre Asociado de Puerto Rico la cual dispone en la Sec. 15 de su Artículo III, conocida como la "Cláusula de Incompatibilidad de Cargos", lo siguiente:

> Ningún Senador o Representante podrá ser nombrado durante el término por el cual fue electo o designado, para ocupar en el Gobierno de Puerto Rico, sus municipios o instrumentalidades, cargo civil alguno creado, **o mejorado en su sueldo, durante dicho término**. Ninguna persona podrá ocupar un cargo en el Gobierno de Puerto Rico, sus municipios o instrumentalidades y ser al mismo tiempo Senador o Representante. Estas disposiciones no impedirán que un legislador sea designado para desempeñar funciones *ad honorem*. Art. III, Sec. 15, Const. E.L.A., L.P.R.A., Tomo 1, ed. 1999, págs. 377-78.[6] (Énfasis suplido).

Dicha disposición constitucional fue incorporada en las distintas piezas legislativas que regulan a los municipios. Así por ejemplo, la Ley Núm. 142 de 21 de julio

---

[6] Se ha comentado lo siguiente sobre la Sección 15:

> [L]a intención evidente fue permitir, en el caso de posiciones mejoradas en sueldo, que desapareciese el impedimento si el legislador renunciaba no solamente su cargo sino el beneficio económico derivable del aumento en compensación en el cargo concernido, ya que **lo que anima la prohibición en esta instancia es evitar que el legislador se beneficie individualmente de sus propios actos legislativos**. J. Trias Monge, <u>Historia Constitucional de Puerto Rico</u>, Ed. U.P.R., 1982 Tomo III, pág. 157. (Énfasis suplido).

de 1960, conocida como la "Ley Municipal", disponía en su Artículo 29 lo siguiente:

> Todas las limitaciones impuestas por la Constitución del [ELA] y por la Ley de Relaciones Federales con Puerto Rico a la Asamblea Legislativa y a sus miembros, serán aplicables, hasta donde fuere posible, a la asamblea legislativa y a los miembros de la misma....21 L.P.R.A. sec. 1171.

Dicho precepto también fue incluido en el Artículo 4.17 de la Ley Núm. 146 de 18 de junio de 1980, conocida como la antigua "Ley Orgánica de los Municipios de Puerto Rico".

El citado Artículo 4.004 de la hoy vigente Ley de Municipios Autónomos, *supra*, ha incorporado esencialmente la misma norma. Por ende, para disponer de la controversia de autos, debemos revisar la interpretación que anteriormente hemos hecho de la frase **"durante el término por el cual fue electo o designado."**

En <u>Cordero, Auditor v. Tribunal de Distrito</u>, 72 DPR 378, 385 (1951), dijimos que la aludida frase había sido empleada consistentemente por los redactores de distintas piezas legislativas "dondequiera que... quisieron hacer que un legislador fuese inelegible durante todo el período de tiempo por el cual fue electo, **independientemente de su renuncia del escaño legislativo**".[7] (Énfasis añadido).

---

[7] Así por ejemplo, cuando Jorge Font Saldaña fue nombrado Secretario de Hacienda, éste renunció "hasta la expiración del término por el cual había sido electo" al aumento de sueldo que se había aprobado para dicho cargo mientras servía como legislador. Trias Monge, <u>op. cit.</u>, pág. 157, escolio 109.

Posteriormente, en González v Alcalde de Utuado, 101 D.P.R. 47, 50 (1973), reafirmamos dicha interpretación y explicamos que un examen del *Diario de Sesiones de la Convención Constituyente* no revela "debate, comentario o discusión que en forma alguna indicase un sentir o interpretación de la frase 'durante el término para el cual fue electo' contrario al 'consagrado por el uso'". *Id*. Pág. 51.

Nótese que en el artículo 4.004 de la Ley de Municipios Autónomos, *supra*, se adoptó la terminología en cuestión después de que ésta fuese interpretada por este foro. Al así proceder, la Asamblea Legislativa escogió una frase cargada de significado, conforme al historial relatado antes. Es evidente que de no haber estado de acuerdo con ese significado y sus implicaciones, la Asamblea Legislativa hubiese empleado otras palabras.

No hay ninguna razón para variar hoy la interpretación que durante cinco décadas hemos dado a las disposiciones constitucionales y estatutarias que prohíbe a los legisladores (en este caso municipales) ocupar un cargo que haya sido creado o **mejorado en su sueldo durante el término por el cual fueron electos legisladores.** La misma es fiel a la intención de los que redactaron nuestra Constitución y de los integrantes de la Asamblea Legislativa, que sabiamente han querido adoptar una norma estricta para salvaguardar la sana administración gubernamental. No puede haber duda  de que dicha norma fue incorporada íntegramente

en el artículo 4.004 de la Ley de Municipios Autónomos, *supra*.

## IV.

Por las razones expresadas antes, concurro con el criterio de la mayoría del Tribunal en cuanto a que el aumento salarial aprobado específicamente durante el término para el cual los recurridos fueron electos asambleístas municipales--el segundo aumento--no los podía beneficiar. Pero me parece claro, además, **que tampoco podían beneficiarse del aumento inicial**, el que se puso en vigor precisamente siendo los recurridos miembros de la Asamblea Municipal. Es cierto que ese aumento fue legislado en concepto por una Asamblea Municipal anterior, **pero se puso en vigor y se le dio existencia** por la Asamblea Municipal a la que pertenecían los recurridos. **No puede negarse, pues, que fue precisamente con el voto de los recurridos que se le dio actualidad y se hizo real el aumento salarial en cuestión.** Los cargos en cuestión fueron **"mejorados en su sueldo"** por los recurrentes ya que fueron éstos quienes hicieron efectivos los aumentos referidos. Me parece evidente que no podían beneficiarse de un resultado que ellos mismos fraguaron. En términos prácticos, los recurrentes tuvieron mucho más que ver con respecto al aumento inicial que en cuanto al segundo de los aumentos que aquí nos conciernen. Si éste les está vedado, no tiene sentido realista decretar que pueden beneficiarse del

primer aumento. No debe olvidarse, según lo ha indicado Trías Monge, op. cit., que lo que se procura evitar es que el funcionario se beneficie de su propio acto legislativo. Véase, *supra,* escolio 1 de esta ponencia y el texto allí citado. Tal beneficio vedado ocurriría aquí si se le permite a los recurridos beneficiarse del aumento inicial en cuestión, que ellos mismos legislaron cuando eran miembros de la Asamblea Municipal.

Aparte de lo anterior, la interpretación esbozada aquí por la mayoría, llevada hasta sus últimas consecuencias, conduciría a resultados insólitos o a anular la prohibición en cuestión. La mayoría resuelve que los recurridos pueden disfrutar del primer aumento o mejora, **aunque se puso en vigor durante su incumbencia**, dado que dicha mejora fue **legislada** antes de que ellos fueran miembros de la asamblea municipal. Esto implica que la prohibición operaría para los miembros de la asamblea electos para el cuatrienio en que fue "legislado" el aumento. El problema con lo anterior es que toda vez que el aumento en cuestión **no estuvo en vigor** durante el cuatrienio en el cual fue legislado, el resultado práctico sería o bien prohibir que un ex-legislador municipal ocupe un puesto que **realmente** no ha sido mejorado en sueldo, o dictaminar que la prohibición no aplica ni a los que legislaron el aumento ni a los que lo pusieron en vigor. Tales opciones son evidentemente insostenibles.

Como entiendo que el dictamen mayoritario descansa en puro conceptualismo y no es consistente con el principio normativo que aquí aplicamos, yo disiento de esta parte de ese dictamen.


                              Jaime B. Fuster Berlingeri
                                    Juez Asociado